730 A.2d 710

**Mark HANDY**

v.

**STATE of Maryland.**

**No. 1567, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

June 1, 1999.

Melissa M. Moore, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Regina Hollins Lewis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before THIEME, ADKINS and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

JAMES S. GETTY, Judge (Ret'd, Specially Assigned).

At the conclusion of a jury trial in the Circuit Court for Baltimore City, Mark Handy, hereinafter referred to as "appellant," was convicted of robbery with a dangerous and deadly weapon, and of wearing and carrying a dangerous and deadly weapon, to-wit: chemical mace. The court imposed a twenty year sentence for the armed robbery conviction, with all except twelve years suspended, and, for purposes of sentencing, merged the other conviction. Appellant filed a timely appeal.

The following issues are presented for review:

1. Whether the trial court erred in denying appellant's motion to suppress evidence of his identification as the robber.

 

2.  Whether the evidence was sufficient to support the conviction for robbery with a dangerous and deadly weapon.[1]

## *Facts*

Harry Sparks, a mail carrier, testified that on October 3, 1996, between 11:00 a.m. and 12:00 noon, as he was approaching a mailbox at 134 North Edgewood Street in Baltimore City, a man approached him and asked for address cards. He told the person he did not have any cards and then continued on his route. Suddenly, the person passed him, turned and sprayed Sparks with pepper spray.

Sparks fell to the ground in an unsuccessful attempt to subdue his attacker. The third day of the month, according to Sparks, is the day Social Security checks are mailed, and the attacker fled with a bundle of these checks. Sparks stated that he had a clear view of his attacker for approximately one minute before being sprayed in the eyes with pepper spray, which blinded him and affected his breathing.

Approximately six months later, Sparks was shown a photographic array by the police. He selected appellant as the robber and rated his level of certainty at "90 some percent" at the time he looked at the array. At the time of the suppression hearing, he testified that there was no question in his mind that appellant was the person who attacked him. Thereafter, the court denied the motion to suppress.

Detective Rodney Thomas testified at trial that he conducted the photo array in which Sparks identified appellant as the robber. He stated further that he learned that one of the stolen Social Security checks had been endorsed by someone other than appellant, and then deposited in an account owned

---

**1.** It is sufficient under Art. 27, § 488 of the Md.Code to show that the weapon is either dangerous or deadly, because the statute uses the term "dangerous or deadly" in the alternative. The fact that the indictment uses the conjunctive "and" as set forth in sec. 489 of Art. 27 is not controlling. *See Hayes v. State,* 211 Md. 111, 126 A.2d 576 (1956).

by a nephew of appellant and the nephew's wife, Curtis Floyd and Carletta Henson.

## *Discussion*

■ In reviewing the denial of a motion to suppress, we confine our analysis to the facts presented at that hearing. *See Flores v. State,* 120 Md.App. 171, 178–79, 706 A.2d 628 (1998); *Matthews v. State,* 106 Md.App. 725, 732, 666 A.2d 912 (1995), *cert. denied,* 341 Md. 648, 672 A.2d 623 (1996). We defer to the suppression court's fact-finding unless we find the fact-finding to be clearly erroneous. *Flores, supra,* at 178, 706 A.2d 628. In addition, we review the evidence in the light most favorable to the party prevailing on the motion. *Id.* We then make an independent appraisal by reviewing the law and applying it to the facts. *See Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990); *Perkins v. State,* 83 Md.App. 341, 346–47, 574 A.2d 356 (1990).

■ Appellant has not shown any suggestiveness in the procedures which led to his identification by Sparks as the robber. In assessing the reliability of an identification, the court considers

[t]he opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ Sparks had a clear view of appellant from a distance of less than a foot for approximately one minute on a clear, sunny day in October. This view preceded the pepper spraying. From the photographic array six months later, he selected appellant after carefully viewing the array. He was "90 some percent" certain that appellant robbed him. We perceive no error in the trial court's denial of the motion to

suppress. The identification was not inherently unreliable or inadmissible.

Secondly, appellant asserts that the evidence was insufficient to convict him of robbery with a deadly weapon, because pepper spray does not qualify as a dangerous or deadly weapon. Although the appellate courts have not passed upon the specific issue of whether pepper spray may be either a dangerous or deadly weapon, we think it qualifies as such for the following reasons.

In *Brooks v. State*, 314 Md. 585, 600, 552 A.2d 872 (1989), the Court of Appeals stated:

> For an instrument to qualify as a dangerous or deadly weapon under sec. 488, the instrument must be (1) designed as "anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat." *Bennett v. State*, 237 Md. 212, 214–15, 205 A.2d 393 (1964); (2) under the circumstances of the case, immediately useable to inflict serious or deadly harm (*e.g.*, unloaded gun or starter's pistol useable as a bludgeon); or (3) actually used in a way likely to inflict that sort of harm (*e.g.*, microphone cord used as a garrote).

We hold that pepper spray may become a dangerous weapon, within the meaning of the *Brooks* factors, when it is used as an offensive weapon to injure and overcome the intended victim. The temporary blinding of an individual qualifies as serious harm, and one of the primary purposes of pepper spray is to provide personal protection in defending against criminal assaults. It is the use to which the object is put that determines whether a particular object is a dangerous or deadly weapon. A jump rope, for example, has a perfectly benign use and purpose, but it may be a deadly weapon if used to hang someone. Likewise, an umbrella may be a suitable weapon for poking out an eye. The trial court properly left for the jury to decide as a factual issue whether pepper spray was a dangerous or deadly weapon. *See also Bell v. State*, 5 Md.App. 276, 246 A.2d 286 (1968) (a knife may be either a deadly or dangerous weapon depending on the size of the

blade and the manner of its use); *Jackson v. State*, 231 Md. 591, 191 A.2d 432 (1963) (an unloaded pistol used in an attempted robbery is a dangerous weapon within the meaning of this section).

Other jurisdictions have addressed whether pepper spray may be considered a dangerous weapon. In *People v. Elliott*, 299 Ill.App.3d 766, 234 Ill.Dec. 303, 702 N.E.2d 643 (1998), a bank robber was convicted of participating in a robbery while armed with a dangerous weapon. The weapon was alleged to be a can of pepper spray, a gas-type chemical containing oleorosin capsicum. The bank tellers who were sprayed described their reactions to the spray as including gagging, being unable to breathe, and screaming from the pain of intense burning in their eyes, noses, and throats. The ill effects lasted for several days.

The Court recognized that (1) some objects are dangerous *per se*, including guns and knives; (2) some objects are never dangerous (a 4" plastic toy gun, as a matter of law); (3) some objects are not necessarily dangerous, but susceptible to such use, including unloaded guns or toy guns of heavy material that can be used as bludgeons; and (4) some objects in category three actually may be used in a dangerous manner. Pepper spray, the Court ruled, fell into category four and the issue was properly one for the trier of fact. An enhanced sentence for the use of a dangerous weapon was upheld.

Pepper spray used in robbing banks was also held to be a "dangerous weapon," warranting a four-level increase in defendant's sentence, in *United States v. Neill*, 166 F.3d 943 (9th Cir., Or.1999), since it caused extreme pain and prolonged impairment of "bodily organs" (respiratory system) of an asthmatic bank employee.

A two-level sentence enhancement for use of a dangerous weapon, pepper spray, was affirmed in *United States v. Taylor*, 135 F.3d 478 (7th Cir., Ill.1998). Two brothers had sprayed bank employees with pepper spray after requiring them to lie on the floor while the robbery was being committed. The employees required eye flushing, oxygen to restore

breathing, treatment for burned flesh, and, in one case, heart monitoring for a pre-existing condition. The injured parties required several days to recover from the ordeal.

Apparently, pepper spray is becoming a weapon of choice in bank robberies. A forty-one-year-old woman, who was also a third-year law student, received an enhanced sentence for the use of mace, or pepper guard, in two of the six bank robberies she committed. The statute authorized more severe sentences when "bodily injury" results from an attack. The bank employees experienced pain and residual effects for days. *United States v. Robinson*, 20 F.3d 270 (7th Cir., Wis.1994).

■ We hold that, whether an object that is not necessarily a dangerous weapon, but can be used as such, may be considered a dangerous weapon under the applicable statute is a question of fact to be resolved by the trier of fact.

Appellant also argues that pursuant to Art. 27, sec. 36, chemical mace and pepper spray are not included in the list of dangerous or deadly weapons that may not be carried openly. Therefore, appellant suggests, pepper mace is not a deadly weapon. We disagree.

■ Art. 27, sec. 36, deals with carrying or wearing a concealed dangerous or deadly weapon, and provides that anyone "carrying or wearing chemical mace, pepper mace, or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner" shall be guilty of a misdemeanor, subject to a fine of $1,000 or imprisonment for not more than three years. Admittedly, pepper spray is not a dangerous or deadly weapon *per se*. That does not mean, however, that pepper spray may not be a dangerous or deadly weapon where, as here, it is used to blind and temporarily disable a person in furtherance of a robbery. The legislature, recognizing the potential danger of chemical mace, pepper spray, and tear gas to injure or disable persons, prohibited carrying any of the three substances openly with the intent to injure others. The language of section 36 does not mandate a holding that the substances named may never be classified as dangerous or deadly weapons. The mere fact that the poten-

tial injuries for exposure to these highly disabling irritants may not be permanent does not compel a contrary result.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.