PEOPLE v NORRIS

Docket No. 202654. Submitted January 13, 1999, at Detroit. Decided June
    25, 1999, at 9:35 A.M.

    James O. Norris was convicted by a jury in the Genesee Circuit Court,
        Richard B. Yuille, J., of armed robbery and was sentenced as a
        fourth-offense habitual offender to fifteen to twenty-five years'
        imprisonment. The defendant appealed, alleging a failure to prove
        that a chemical device containing tear gas and oleoresin capsicum
        that an accomplice used to spray the faces of employees during the
        robbery of a jewelry store constituted a dangerous weapon within
        the meaning of the armed robbery statute. He also alleged insuffi-
        cient evidence was presented to permit the jury to infer that he
        actively participated in planning the robbery and drove the getaway
        vehicle.

        The Court of Appeals *held*:

        The evidence, when viewed in a light most favorable to the pros-
        ecution, was sufficient to permit a reasonable jury to conclude
        that, under the facts of this case, the tear gas mixture was a dan-
        gerous weapon within the meaning of the armed robbery statute
        and that the defendant actively participated in planning the robbery
        and drove the getaway vehicle.

        Affirmed.

1. ROBBERY — ARMED ROBBERY — DANGEROUS WEAPON — TEAR GAS DEVICE.

    A chemical device containing a tear gas mixture that is sprayed in a
        victim's face during a robbery may be found to be a "dangerous
        weapon" within the meaning of the armed robbery statute; whether
        the device is a dangerous weapon under the circumstances of the
        case is a question for the factfinder (MCL 750.529; MSA 28.797).

2. CRIMINAL LAW — AIDING AND ABETTING.

    A defendant who procures, counsels, aids, or abets in the commission
        of an offense may be convicted and punished as if the defendant
        committed the offense directly; the prosecutor must prove that the
        crime charged was committed by the defendant or some other per-
        son, the defendant performed acts or gave encouragement that
        assisted the principal in committing the crime, and the defendant
        intended the commission of the crime or knew the principal

intended its commission at the time the defendant gave aid or encouragement; mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that the defendant aided or assisted in the commission of the crime; facts to consider in determining an aider and abettor's state of mind include a close association between the defendant and the principal, the defendant's participation in planning or executing the crime, and evidence of flight after the crime (MCL 767.39; MSA 28.979).

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *Arthur A. Busch,* Prosecuting Attorney, and *Donald A. Kuebler,* Assistant Prosecuting Attorney, Chief, Appeals, Research, and Training, for the people.

*Laurence R. Imerman,* for the defendant on appeal.

Before: SAWYER, P.J., and BANDSTRA and R. B. BURNS*, JJ.

BANDSTRA, J. In this case, we are asked to decide whether a chemical device containing a tear gas mixture that was sprayed in the faces of employees during a jewelry store robbery can be a "dangerous weapon" within the meaning of the armed robbery statute, MCL 750.529; MSA 28.797. We conclude that it can.

I

This case arises from a jewelry store robbery in which store employees were sprayed with a device containing military tear gas and oleoresin capsicum. The chemical spray caused the employees to suffer extreme eye pain and irritation, burning sensations on

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

the skin and in the nose, mouth, and lungs, and breathing difficulties. One of the victims suffered a cornea defect in both eyes that was consistent with having been chemically sprayed. Several perpetrators were involved in the robbery in which twenty Rolex watches, valued at approximately $100,000, were taken. Numerous witnesses observed the robbery, and the perpetrators were immediately apprehended following the robbery. The prosecutor alleged that although defendant was not present during the robbery, he participated in the planning and acted as the getaway driver.

Following a jury trial, defendant was convicted of armed robbery, MCL 750.529; MSA 28.797. The court also determined that defendant was an habitual offender, fourth offense, MCL 769.12; MSA 28.1084. Defendant was sentenced to fifteen to twenty-five years' imprisonment. He now appeals as of right. We affirm.

II

Defendant argues that there was insufficient evidence to support his armed robbery conviction because the prosecutor failed to prove that the chemical device containing tear gas and oleoresin capsicum that an accomplice used to spray store employees constituted a "dangerous weapon" within the meaning of the armed robbery statute.[1] We disagree. In reviewing the sufficiency of the evidence in a crim-

---

[1] Although defendant initially asserts that a question exists regarding whether the substance sprayed in the employees' faces was the same substance that was actually seized from an accomplice, we conclude that this assertion is without merit. In addition to the circumstantial evidence from which the inference could be made, the accomplice himself testified that

inal case, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997).

The elements of armed robbery are (1) an assault and (2) a felonious taking of property from the victim's person or presence (3) while the defendant is armed with a dangerous weapon described in the statute. *People v Johnson*, 215 Mich App 658, 671; 547 NW2d 65 (1996). Defendant alleges a failure of proof regarding the third element, which requires the prosecutor to prove that defendant was armed with "a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon . . . ." MCL 750.529; MSA 28.797. In the present case, we are concerned with the first part of the inquiry, i.e., whether the chemical spray with which the principal was armed can be considered "a dangerous weapon."[2]

The armed robbery statute does not define the term "dangerous weapon." MCL 750.529; MSA 28.797; *People v Velasquez*, 189 Mich App 14, 17; 472 NW2d 289 (1991). However, "[w]hether an object is a dangerous

---

the spray found in his pocket and seized by the police was the same spray that was used during the robbery.

[2] The second method of establishing armed robbery, i.e., whether the principal used or fashioned an article to resemble a dangerous weapon, is inapplicable. That method was intended to apply to a situation where the object is harmless in itself, e.g., an unloaded gun, but is used in a manner so as to lead the victim to reasonably believe that the object is a dangerous weapon. *People v Banks*, 454 Mich 469, 473; 563 NW2d 200 (1997), quoting *People v Parker*, 417 Mich 556, 565; 339 NW2d 455 (1983); *People v Barkley*, 151 Mich App 234, 237; 390 NW2d 705 (1986); *People v McCadney*, 111 Mich App 545, 551; 315 NW2d 175 (1981).

weapon depends upon the object itself and how it is use[d]." *People v Barkley*, 151 Mich App 234, 238; 390 NW2d 705 (1986). Further, a dangerous weapon has been described as either (1) a weapon designed to be dangerous and capable of causing death or serious injury[3] (e.g., a loaded gun) or (2) any other object capable of causing death or serious injury that the defendant used as a weapon (e.g., a screwdriver used as a knife). See CJI2d 18.1; *Barkley, supra;* see, also, *People v Goolsby*, 284 Mich 375, 378; 279 NW 867 (1938) (a dangerous weapon within the meaning of the felonious assault statute, MCL 750.82; MSA 28.277, is one that is deadly or capable of inflicting serious injury). Whether an object is a dangerous weapon under the circumstances of the case is a question for the factfinder. *Barkley, supra* at 238, n 1; *People v McCadney*, 111 Mich App 545, 550; 315 NW2d 175 (1981); see, also, *People v Jolly*, 442 Mich 458, 470; 502 NW2d 177 (1993) ("the factfinder must be permitted to determine the existence of a dangerous weapon . . .").

Although there are no Michigan cases directly on point, this Court previously addressed the question in *People v Bender*, 124 Mich App 571, 576; 335 NW2d 85

---

[3] With regard to the definition of "serious injury," we could find no Michigan cases that provide a definition of "serious injury" for purposes of the armed robbery statute. However, the definition of "serious injury" employed for the aggravated assault statute, MCL 750.81a; MSA 28.276(1), is instructive. "Serious injury" for purposes of that statute has been defined as "a physical injury that requires immediate medical treatment or that causes disfigurement, impairment of health, or impairment of a part of the body." CJI2d 17.6(4); *People v Brown*, 97 Mich App 606, 611; 296 NW2d 121 (1980) (although the complainant did not seek immediate medical attention, the evidence was sufficient to prove a serious injury where the complainant suffered facial cuts, an eye injury, and a bruised neck). Immediate medical treatment was required for many of the injuries suffered by the victims here, as will be discussed later in this opinion.

(1983), regarding whether an aerosol spray can containing Chlorobenzalmalonomatrile used during an assault was a "dangerous weapon" for purposes of the felonious assault statute. This Court declined to hold, as a matter of law, that an aerosol spray can is not a dangerous weapon, but rather concluded that the issue was a question of fact for the trier of fact. *Id.*

With regard to considering whether mace or pepper spray is a dangerous weapon for purposes of armed robbery, courts in other states have concluded that they can be dangerous weapons. In *Pitts v Oklahoma*, 649 P2d 788, 791 (Okla Cr App, 1982), the court stated that although mace is a substance designed as a defensive weapon, it may be used in such a manner that it causes great bodily harm. Thus, the court in *Pitts* rejected the defendants' argument that insufficient evidence existed that a robbery had been committed with a dangerous weapon. In *People v Elliott*, 299 Ill App 3d 766, 771; 702 NE2d 643 (1998), the court rejected the defendant's argument that pepper spray was not, "as a matter of law, a dangerous weapon under the armed robbery statute." Although the court recognized that the effects of pepper spray are normally temporary, the effects are disabling and the victims in that case did suffer injury (including breathing difficulties, burning eyes, nausea, and temporary incapacitation) although the injuries may not have been permanent. *Id.* at 773. The court concluded that whether the pepper spray constituted a dangerous weapon was a question properly determined by the trier of fact. *Id.*

Federal courts also have concluded that mace, pepper spray, or tear gas can be a "dangerous weapon" in

other contexts. For example, in *United States v Dukovich*, 11 F3d 140, 142-143 (CA 11, 1994), the court held that tear gas sprayed by a defendant during a bank robbery as the victims were facedown on the floor was a "dangerous weapon" justifying sentence enhancement under the United States Sentencing Guidelines[4] where the victims experienced eye pain, severe headaches, and burning sensations in their faces and throats. See, also, *United States v Neill*, 166 F3d 943, 949-950 (CA 9, 1999), cert pending (pepper spray used by a defendant during robberies was a "dangerous weapon" that could be used to enhance a sentence under the United States Sentencing Guidelines where a victim experienced burning sensations in her eyes and nose and developed severe asthma requiring lifelong daily medication); *United States v Bartolotta*, 153 F3d 875, 879 (CA 8, 1998) (mace constituted "dangerous weapon" justifying sentence enhancement under the United States Sentencing Guidelines where the victim developed chemical pneumonia and had to take daily steroid shots for over four months and steroid pills for one year to cleanse the mace from her body); *United States v Robinson*, 20 F3d 270, 278 (CA 7, 1994) (mace sprayed by a defendant during a bank robbery constituted a "dangerous weapon" for the purpose of sentence enhancement under the United States Sentencing Guidelines where the victims experienced "pain which lasted for hours and had some residual effect

---

[4] The United States Sentencing Guidelines defines "dangerous weapon" as " 'an instrument capable of inflicting death or serious bodily injury' " and "serious bodily injury" as an " 'injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.' " *Dukovich, supra* at 142.

for days"); *United States v Brown*, 508 F2d 427, 430 (CA 8, 1974) (loaded tear gas gun is a dangerous weapon under a statute that prohibits carrying dangerous weapons on an aircraft).[5]

In the present case, the victims testified that they experienced extreme eye pain and burning sensations that required two of them to seek medical treatment. William Henry testified that he experienced severe pain on his face and in his left eye and had to be taken to the hospital to have his eyes flushed. He further testified that as a result of being sprayed, he needs glasses to read and has blurred vision in his left eye. Further, Henry's ophthalmologist testified that, although not permanent, Henry had a cornea defect in both eyes that was consistent with having been chemically sprayed. Dorothy Fox, who was also taken to the hospital to have her eyes flushed, testified that the spray permeated her clothing and caused a severe burning sensation on her skin and in her eyes, nose, and mouth that lasted, "several hours, not even until the morning hours until it started going away . . . ." The spray also penetrated and burned her lungs, making it difficult to breathe. Kathleen Sharbo testified that, although she did not go to the hospital after the incident, she was unable to wear her contact lenses for a month because the spray irritated her eyes. Under the facts of this case, we conclude that

---

[5] But see *United States v Harris*, 44 F3d 1206, 1216 (CA 3, 1995) (government did not produce evidence to establish that mace used to spray tellers during a bank robbery was a "dangerous weapon" for purposes of sentence enhancement under the United States Sentencing Guidelines); *United States v Lancaster*, 6 F3d 208, 209-211 (CA 4, 1993) (victim's injury that included momentary burning eyes and cheeks after being sprayed with mace during a bank robbery was not a "significant injury" that constituted a "bodily injury" for purposes of sentence enhancement under the United States Sentencing Guidelines).

the evidence, when viewed in a light most favorable to the prosecution, was sufficient to permit a reasonable jury to conclude that the tear gas mixture was a "dangerous weapon" within the meaning of the armed robbery statute.[6]

III

Defendant also argues that the evidence was insufficient to support his armed robbery conviction because the facts failed to prove that he was an active participant. We disagree. One who procures, counsels, aids, or abets in the commission of an offense may be convicted and punished as if he committed the offense directly. MCL 767.39; MSA 28.979; *People v Turner*, 213 Mich App 558, 568; 540 NW2d 728 (1995). To establish that a defendant aided and abetted a crime, the prosecutor must prove that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the principal in committing the crime, and (3) the defendant intended the commission of the crime or knew the principal intended its commission at the time he gave aid or encouragement. *Turner, supra.* Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the

---

[6] To the extent that defendant asserts that the chemical spray cannot be a dangerous weapon on the basis that the victims did not suffer serious injuries because their injuries were not permanent, we conclude that this assertion is without merit. Defendant fails to cite any authority stating that the injury must be permanent in order to be considered serious. Further, the case law previously cited in this opinion suggests that the injury need not be permanent. See, e.g., *Dukovich, supra* at 142-143 (eye pain, severe headaches, and burning sensations constituted serious injuries).

commission of the crime. *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

Here, a store employee testified that, about an hour before the robbery occurred, defendant entered the store with a group of other men and then left, but that she did not see him a second time when the store was robbed. One witness testified that the three black males she saw rob the store subsequently ran toward a white car parked just outside the mall in which the store is located, where a fourth black male was waiting inside. Other witnesses testified that they saw the three men enter the white car already occupied by a fourth black male and drive away. Flint Township Police Officer James Daly and Brian Turner, a security guard employed by the mall, testified that they followed the white car from the mall parking lot to a lot across the street where the four occupants jumped out of the car and ran. They pursued the two suspects who got out of the driver's side of the vehicle. Turner testified that when the two suspects ran in different directions, he chased and eventually apprehended the suspect whom he identified as defendant. Daly testified that after defendant was apprehended by Turner, he recognized that defendant was wearing the same clothing and had the same body build as the person he saw running from the car. Further, after his arrest, defendant told a police officer, "I know better to be fooling with this stuff, I did something stupid, I deserve what I got coming, I didn't go in the store." In addition, following the robbery, traces of an ultraviolet dye like that contained in the chemical spray used during the robbery were found on defendant's shirt.

Jermaine Johnson, who testified for the prosecution pursuant to a plea agreement, stated that he and five others, including defendant, came from Ohio to rob the jewelry store. He testified that when they arrived, they went to the jewelry store they were going to rob and then went to a restaurant where they, including defendant, discussed their plans before returning to commit the robbery. After the robbery, Johnson and three others drove away in a white car that one of them had stolen to use as a getaway vehicle. Although Johnson denied during the trial that defendant, who was his half-brother, was involved in the robbery, the prosecutor introduced evidence that Johnson had previously testified during his plea hearing that defendant was an active participant in planning the robbery, that defendant waited in and drove the getaway vehicle, and that defendant was one of the four men who ran from the vehicle.

Viewing this evidence in a light most favorable to the prosecutor, we conclude that there was sufficient evidence to permit the jury to infer that defendant actively participated in planning the robbery and that he drove the getaway vehicle. See *Turner, supra* at 568-569 (factors to consider in determining aider and abettor's state of mind include close association between the defendant and the principal, the defendant's participation in planning or executing the crime, and evidence of flight after the crime); *People v Martin*, 150 Mich App 630, 634-635; 389 NW2d 713 (1986) (the defendant's conviction as an aider and abettor of an armed robbery was supported by eyewitness testimony identifying the defendant as the driver of the getaway vehicle). Although Johnson denied during the trial that defendant participated in the robbery

and testified that he lied during his plea hearing when he stated that defendant helped to plan the robbery and drove the getaway vehicle, we will not interfere with the jury's credibility determination. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *People v DeLisle*, 202 Mich App 658, 660; 509 NW2d 885 (1993). There was sufficient evidence to conclude beyond a reasonable doubt that defendant committed armed robbery.

We affirm.