745 A.2d 1107

**Mark HANDY**

v.

**STATE of Maryland.**

**No. 71, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 14, 2000.

686

Peter F. Rose, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

Mark Handy, petitioner, was convicted by a jury in the Circuit Court for Baltimore City of robbery with a dangerous or deadly weapon, robbery, and wearing and carrying a weap-

on openly with intent to injure. The weapon petitioner used during the robbery was pepper spray (also called "pepper mace"). The circuit court sentenced petitioner to twenty years imprisonment for the robbery with a dangerous or deadly weapon charge, with all but twelve years suspended in favor of five years probation. The other charges were merged for sentencing purposes. Petitioner appealed to the Court of Special Appeals, which affirmed the judgment of the circuit court. *Handy v. State,* 126 Md.App. 548, 730 A.2d 710 (1999). This Court granted petitioner a writ of certiorari based on the following issue: "Whether pepper spray or mace qualifies as a dangerous or deadly weapon for purposes of proving the crime of robbery with a dangerous or deadly weapon[.]" We hold that pepper spray or mace may be considered a deadly or dangerous weapon when used during the commission of a robbery. Because there was sufficient evidence in this case for the jury to find that petitioner's use of pepper spray constituted the use of a dangerous weapon during the commission of a robbery, we affirm.

## I. Facts

Harry Sparks, a letter carrier with the United States Postal Service, was delivering mail on his usual route in Baltimore on October 3, 1996, when he was approached by petitioner in front of 134 North Edgewood Street. Petitioner asked him for change of address cards. Mr. Sparks informed petitioner that he did not have any change of address cards and that he normally did not carry them. Petitioner proceeded up the stairs to 134 North Edgewood and blocked access to the porch. He then stepped down as if to let Mr. Sparks pass. As Mr. Sparks began to head up the stairs to Number 134, petitioner sprayed him in the eyes with pepper spray. Mr. Sparks attempted to wrestle with petitioner but fell to the ground, after which petitioner grabbed the mail bag and fled. As Mr. Sparks would later testify at trial, October 3, 1996, was the day for that month in which retirees received their Social Security payment checks in the mail. Mr. Sparks gave a partial description of the robber to the police when they

arrived and identified petitioner six months later from a photo array.

At trial, counsel for petitioner moved for a judgment of acquittal at the close of the State's evidence. She argued that pepper spray was not a dangerous or deadly weapon under the robbery statute petitioner was charged with violating, Maryland Code (1957, 1996 Repl.Vol.), Article 27, section 488.[1] The trial judge denied the motion. Defense counsel renewed the motion at the end of trial, which the trial judge again denied. The jury convicted petitioner of all charges against him.

Petitioner appealed to the Court of Special Appeals. That court affirmed petitioner's conviction, holding, *inter alia*, that

> pepper spray may become a dangerous weapon ... when it is used as an offensive weapon to injure and overcome the intended victim. The temporary blinding of an individual qualifies as serious harm, and one of the primary purposes of pepper spray is to provide personal protection in defending against criminal assaults. It is the use to which the object is put that determines whether a particular object is a dangerous or deadly weapon.

*Handy*, 126 Md.App. at 553, 730 A.2d at 712. The intermediate appellate court also held that "whether an object that is not necessarily a dangerous weapon, but can be used as such, may be considered a dangerous weapon under the applicable statute is a question of fact to be resolved by the trier of fact." *Id.* at 555, 730 A.2d at 713. We shall affirm the result, but upon slightly different reasons.

We hold that whether it is possible for an object to be used as a deadly or dangerous weapon and whether its use in a particular way constitutes the use of a dangerous or deadly weapon in the commission of a criminal offense is a matter of law for the court. In any given case, whether the facts alleged by the State are proven is for the trier of fact to

---

1. All references to Article 27 of the Maryland Code shall be to the 1996 Replacement Volume unless otherwise indicated.

determine. Whether pepper spray can be used as a deadly or dangerous weapon, and whether spraying pepper spray into a person's face for the purpose of robbing that person constitutes robbery with a deadly or dangerous weapon are questions of law for the court. Here, because the jury found that petitioner did, in fact, discharge the pepper spray into the face of the victim during the course of a robbery, we shall affirm the Court of Special Appeals's affirmance of petitioner's conviction for that offense.

## II.   Discussion

■   Article 27, section 488, the section with which petitioner was charged and convicted of violating reads:

### § 488.   Robbery with deadly weapon.

Every person convicted of the crime of robbery or attempt to rob with a dangerous or deadly weapon or accessory thereto is guilty of a felony, shall restore to the owner thereof the thing robbed or taken, or shall pay him the full value thereof, and be sentenced to imprisonment for not more than 20 years.

This Court has noted previously that "[r]obbery with a [dangerous or] deadly weapon is not a separate substantive offense, but if the State can prove that a defendant used a [dangerous or] deadly weapon during the commission of a robbery, the defendant is subject to harsher penalties." *Conyers v. State*, 345 Md. 525, 558, 693 A.2d 781, 796–97 (1997) (citing *Whack v. State*, 288 Md. 137, 140–41, 416 A.2d 265, 266 (1980)); *cf. Eldridge v. State*, 329 Md. 307, 316, 619 A.2d 531, 536 (1993). Because the words "deadly or dangerous weapon" are stated in the disjunctive, the State need not prove that the weapon is deadly; the dangerousness of the weapon used will suffice to sustain a conviction. *See Hayes v. State*, 211 Md. 111, 116, 126 A.2d 576, 578–79 (1956); *Bell v. State*, 5 Md.App. 276, 279, 246 A.2d 286, 288 (1968).

### A.   Treatment of Pepper Spray as a Dangerous Weapon

■   This Court examined what constitutes a dangerous or deadly weapon under section 488 in *Brooks v. State*, 314 Md.

585, 552 A.2d 872 (1989). We noted two approaches: the subjective test, in which "a weapon is deadly or dangerous if the victim believes it to be of that character and is, therefore, intimidated by its use," and the objective test, in which "to be deadly or dangerous a weapon must be inherently of that character or must be used or useable in a manner that gives it that character." *Id.* at 590, 552 A.2d at 875. We ultimately adopted the objective test. *Id.* at 600, 552 A.2d at 880. In doing so, we held that a related statute, Article 27, section 36, which prohibits the concealed wearing or carrying of a dangerous or deadly weapon, or the wearing or carrying of a dangerous or deadly weapon openly with intent to injure, embodied the Legislature's intent that the trier of fact determine objectively whether the facts supported that an object *was used* as a dangerous or deadly weapon:

> One aspect of context is the "relationship [of the statute under consideration] to earlier and subsequent legislation...." *Wynn* [*v. State*], 313 Md. [533,] 539, 546 A.2d [465,] 468 [(1988)] (quoting *Kaczorowski* [*v. Mayor of Baltimore*], 309 Md. [505,] 515, 525 A.2d [628,] 632–633 [(1987)]). On the statute books when Chapter 457, Acts of 1927, was enacted, [creating section 488,] was the predecessor to Article 27, § 36. In 1927, that provision was Article 27, § 42, and it read thus:
>
>> Every person who shall wear or carry any pistol, dirk-knife, bowie knife, slung shot, billy, sand club, metal knuckles, razor, or any other dangerous or deadly weapon of any kind whatsoever (pen knives excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor.
>
> This statute gives us an indication of what sort of implements the legislature believed to be dangerous or deadly weapons. It is apparent that the term encompasses only those devices that are inherently dangerous or deadly or that may be used with dangerous or deadly effect. *See Walker v. State,* 53 Md.App. 171, 204, 452 A.2d 1234, 1251

(1982), *cert. denied,* 296 Md. 63 (1983). As in the case of § 488, we have held that an unloaded pistol is covered. *Wallace v. Warden,* 226 Md. 670, 174 A.2d 435 (1961). So is a starter's pistol. *Jackson [v. State* ], 231 Md. 591, 191 A.2d 432 [ (1963) ]. But § 36 was not aimed at minimizing intimidation of victims. A victim or potential victim cannot be intimidated by the carrying of a concealed weapon. It was designed to penalize those who had in their possession, with evil intent, instruments that were likely to be used to inflict serious or deadly injury. In short, the objective approach to determining what was dangerous or deadly was embodied in this statute. It is not unreasonable to assume that the legislature that adopted what is now § 488 transported into that statute the "dangerous and deadly" language of old § 42, intending it to carry the same meaning as it then bore.

*Id.* at 599–600, 552 A.2d at 879–80 (first alteration in original). Based on the previous cases concerning dangerous or deadly weapons, we developed three objective tests, only one of which need be satisfied, to determine that an object used during the commission of a robbery was a dangerous or deadly weapon:

> [F]or an instrument to qualify as a dangerous or deadly weapon under § 488, the instrument must be (1) designed as " 'anything used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat,' " *Bennett [v. State* ], 237 Md. [212,] 214–215, 205 A.2d [393,] 394 [ (1964) ]; (2) under the circumstances of the case, immediately useable to inflict serious or deadly harm (*e.g.,* unloaded gun or starter's pistol useable as a bludgeon); or (3) actually used in a way likely to inflict that sort of harm (*e.g.,* microphone cord used as a garrote).

*Id.* at 600, 552 A.2d at 880.[2] Petitioner asks this Court to hold that pepper spray *per se* is not a dangerous weapon under all three of the *Brooks* objective tests.

---

**2.** We also noted in *Bennett,* 237 Md. at 215, 205 A.2d at 394 (quoting 3 *Wharton's Criminal Law and Procedure* § 961, at 113 (Anderson ed.1957)):

■ It is for the trial court to determine initially, as a matter of law, whether an object can be considered a deadly or dangerous weapon under any of the *Brooks* categories. If the trial court is satisfied that an object can fit into any of the *Brooks* tests, then the trier of fact is left to determine whether the criminal use of a deadly or dangerous weapon, actually occurred.

Some of the cases assuming the potential deadly or dangerous nature of objects, have addressed only the issue of whether the facts support the use of such weapons, and have done so in a less than complete analysis of which issues are matters of law for the court and which are purely factual matters. They have nonetheless supported the general proposition that factual matters are for the trier of fact. In arriving at the correct bottom line holdings, the language of the opinions has sometimes missed the intervening step we have described above, and further discuss, *infra*. The cases include: *People v. Davis*, 42 Cal.App.4th 806, 819, 49 Cal.Rptr.2d 890, 898 (1996) (noting that certain weapons, as a matter of law, may be classified as *per se* deadly or dangerous for the purposes of first-degree robbery and that whether other weapons that "are not weapons in the strict sense, yet may become such according to the manner of use," were used as such "is a question of fact"); *People v. Elliott*, 299 Ill.App.3d 766, 773,

---

The character of a weapon as a deadly or dangerous weapon is not necessarily determined by its design, construction, or purpose. A weapon may be deadly or dangerous although not especially designed or constructed for offensive or defensive purposes or for the destruction of life or the infliction of bodily injury. Accordingly, when a weapon is in fact used in such a way as is likely to produce death or grievous bodily harm it may be properly regarded as a dangerous or deadly weapon.

We ultimately held in *Bennett* that a microphone cord used as a garrote constituted a dangerous weapon:

Here, the taxicab driver was put in fear by the cord twisted about his neck; the cord was an effective instrument of strangulation; indeed, even when used only to restrain the driver, it produced dazing, a loss of speech, and bruising. The finding by Judge Harlan that the manner of use of the cord in the robbery constituted it a dangerous weapon was fully supported by the evidence.

*Id.* at 216, 205 A.2d at 395.

234 Ill.Dec. 303, 702 N.E.2d 643, 647 (1998) (recognizing that if the trial court is unable to determine as a matter of law that an object *per se* is a dangerous or deadly weapon or that it *per se* can never be categorized as such, then the jury must decide whether the object, in that case, actually was used or usable as a deadly or dangerous weapon); *Commonwealth v. Tarrant*, 367 Mass. 411, 416, 326 N.E.2d 710, 714 (1975) ("[W]here the instrumentality is not per se harm-inducing it is a question of fact ... whether the circumstances surrounding the presence of the instrumentality suggest its latent character as dangerous."); *State v. Howard*, 125 N.J.Super. 39, 45, 308 A.2d 366, 369 (App.Div.1973) (holding that a straight razor is neither *per se* a lethal weapon or *per se* excluded from that categorization as a matter of law, but can be a lethal weapon if used as such under the facts of the case); *State v. Bonner*, 118 Ohio App.3d 815, 823, 694 N.E.2d 125, 131 (1997) (holding that a robbery while the defendant held a metal bludgeon constituted sufficient evidence as a matter of law to submit the issue to the jury of whether the bludgeon was actually used for the purposes of aggravated robbery); *Beeler v. State*, 334 P.2d 799, 806 (Okla.Crim.App.1959) (noting that it is for the jury to decide whether weapons that are not "clearly lethal," but are capable of being so used, were actually used in a manner to produce death or great bodily harm).

■ The issue of whether an object not dangerous or deadly *per se* may nevertheless be usable in a dangerous and deadly manner is a matter of law for the court to determine. The issue of whether use of the object in the particular way in which the State alleges it to have been used constitutes the commission of a crime, e.g., robbery with a deadly or dangerous weapon, is also a matter of law for the court to determine. An example of how a trial court might perform this duty could be an instruction informing the jury that if a particular object is used in a particular way, it is being used as a dangerous or deadly weapon for the purpose of whatever criminal statute or offense is at issue.

The issue for the trier of fact is whether the evidence supports, beyond a reasonable doubt, that the facts alleged by the State have happened.

If the objects are not susceptible of being used as deadly or dangerous weapons, or if the alleged facts, if true, do not constitute the commission of the crime charged, the trial court, upon proper motion, should dismiss or grant an acquittal of that charge. Only if the objects are, or are susceptible to being, dangerous or deadly weapons, and only if the facts alleged and the evidence in support thereof would permit, as a matter of law, a finding that the particular crime has been committed, should the jury normally be permitted to determine whether those facts did occur. In *Brooks,* 314 Md. at 600–01, 552 A.2d at 880, for instance, this Court held, as a matter of law, that a lightweight plastic toy gun generally may not be classified as a deadly or dangerous weapon under the tests enunciated by the Court. The spraying of pepper spray into a person's face for the purpose of facilitating a robbery of that person is, as a matter of law, the use of a dangerous and deadly weapon in the commission of robbery because pepper spray may be classified as a deadly or dangerous weapon under any of the three *Brooks* categories.

Petitioner argues that pepper spray does not fall under the first category, instruments "used or designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat," *Brooks,* 314 Md. at 600, 552 A.2d at 880, because pepper spray "is designed to *temporarily disable* an attacker to provide a means of hasty escape [and] is designed *not* to cause serious bodily injury or death." Although this Court has never addressed whether pepper spray could fall under this first category of weapons, other jurisdictions have done so for various reasons. The great majority of these courts hold that pepper spray, as a matter of law, can be used as a dangerous weapon, including when it is used during the commission of a robbery. For instance, in *People v. Norris,* 236 Mich.App. 411, 600 N.W.2d 658 (1999), the defendant sprayed several employees of a

jewelry store with a mixture of tear gas and pepper spray during a robbery. The employees testified to numerous maladies: "extreme eye pain and irritation, burning sensations on the skin and in the nose, mouth, and lungs, and breathing difficulties. One of the victims suffered a cornea defect in both eyes...." *Id.* at 412–13, 600 N.W.2d at 660. The Michigan Court of Appeals held that these types of injuries were sufficient enough to classify the tear gas and pepper spray mixture as a dangerous weapon under Michigan's armed robbery statute. *Id.* at 418–19, 600 N.W.2d at 662–63.

In *United States v. Neill,* 166 F.3d 943, 949–50 (9th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 2037, 143 L.Ed.2d 1046 (1999), the United States Court of Appeals for the Ninth Circuit held that pepper spray was a dangerous weapon for the purpose of increasing a bank robbery sentence under the federal sentencing guidelines. The court noted that, under the federal guidelines, dangerous weapons are those that inflict "serious bodily injury," which means "extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty...." *Id.* at 949 (quoting U.S. Sentencing Guidelines Manual § 1B1.1 cmt. 1(j) (1997)). The court noted that one victim testified that she choked and coughed during the attack, while her eyes and nose burned. She suffered asthma attacks for a week after the incident. Because the pepper spray "caused extreme pain and prolonged impairment" of the victim's lungs, the court held it was proper to increase the defendant's sentence for the use of a dangerous weapon. *Id.* at 950. *See also Elliott,* 299 Ill. App.3d at 773, 234 Ill.Dec. 303, 702 N.E.2d at 648 (holding that the use of pepper spray during a bank robbery constituted use of a dangerous weapon when the victims experienced difficulty breathing, nausea, and burning in the eyes); *cf. United States v. Taylor,* 135 F.3d 478, 481–82 (7th Cir.1998) (holding that "bodily harm" caused by the use of pepper spray on several victims was sufficient to increase the sentence under the federal guidelines); *United States v. Robinson,* 20 F.3d 270, 278–79 (7th Cir.1994) (same).

Mace and tear gas, which cause similar effects as pepper spray,[3] have also been treated as dangerous weapons in courts of other jurisdictions. In *United States v. Dukovich,* 11 F.3d 140 (11th Cir.), *cert. denied,* 511 U.S. 1111, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994), the government sought a sentence enhancement under the federal guidelines because the defendant had sprayed tear gas in the air during a bank robbery. The Eleventh Circuit noted that one victim "experienced eye pain and a severe headache," that the gas made everyone in the bank "tear up," and that a teller "was struck near her left eye, causing a severe burning sensation." *Id.* at 142. The court agreed that the tear gas constituted a dangerous weapon for sentencing purposes. *Id.* The Eighth Circuit also held in *United States v. Bartolotta,* 153 F.3d 875, 879 (8th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 850, 142 L.Ed.2d 703 (1999), that the defendant's act of spraying mace on two victims during an attempted robbery of an armored car, which caused them "serious bodily injury," was proved sufficiently to enhance the sentence for use of a dangerous weapon. *See also United States v. Brown,* 508 F.2d 427, 430 (8th Cir.1974) (noting that the defendant could be convicted for attempting to board an aircraft with a concealed dangerous weapon when he possessed a tear gas gun in his suitcase); *State v. Johnson,* 730 So.2d 1035, 1038 (La.Ct.App.1999) (affirming a conviction for armed robbery with a dangerous weapon when the defendant blinded a correctional officer with mace and took his billfold); *Barrett v. State,* 105 Nev. 361, 361–62, 775 P.2d 1276, 1277–78 (1989) (upholding a sentence enhancement for using a deadly weapon when the defendant sprayed a robbery victim with mace); *Pitts v. State,* 649 P.2d 788, 791 (Okla.Crim.App. 1982) (holding that a can of mace used to threaten a robbery

---

**3.** "Mace" is "a nonlethal spray containing purified tear gas and chemical solvents which temporarily incapacitate a person by causing eye and skin irritations." *The Random House Dictionary of the English Language* 859 (unabr. ed.1983). "Tear gas" is "a gas that makes the eyes smart and water, thus producing a temporary blindness, used in modern warfare...." *Id.* at 1458. "Pepper mace" is defined in Article 27, section 36(e) as "an aerosol propelled combination of highly disabling irritant pepper-based products."

victim was a dangerous weapon under Oklahoma's aggravated robbery statute); *cf. Hartman v. State,* 403 So.2d 1030, 1031 (Fla.Dist.Ct.App.1981) (holding that the defendant was properly convicted of armed robbery when the weapon was a can of mace).[4] These cases indicate that pepper spray, mace, and tear gas canisters generally are designed in such a way that they may fit within the first category of *Brooks.*

We agree with the bottom line of the cases mentioned, *supra.* We, however, believe that when, as a matter of law, an object or substance can be used as a deadly or dangerous weapon, the potential for bodily harm suffices, regardless of the extent of resulting harm in an actual case. For example, if a person threatens to use pepper spray or attempts to use pepper spray but misses the victim's respiratory system or eyes, striking him on the shoulder or chest, but nonetheless successfully completes the robbery, or attempts to complete it, he or she has committed robbery with a deadly or dangerous weapon, just as if the offender had committed a robbery by simply displaying a handgun, or by simply discharging a handgun, but missing the victim.

Next, we consider whether pepper spray falls under the second and third *Brooks* categories, whether "under the circumstances of the case," the weapon was "immediately useable to inflict serious ... harm," or whether it was "actually used in a way likely to inflict that sort of harm." 314 Md. at 600, 552 A.2d at 880. Petitioner implies that the use of pepper spray in this case was not dangerous because the victim's

---

4. Petitioner cites two cases that have held that mace is not a dangerous or deadly weapon. *See United States v. Harris,* 44 F.3d 1206 (3d Cir.), *cert. denied,* 514 U.S. 1088, 115 S.Ct. 1806, 131 L.Ed.2d 731 (1995); *Austin v. State,* 336 So.2d 480 (Fla.Dist.Ct.App.1976). We distinguish *Harris* because the Third Circuit did not hold that mace could never be treated as a dangerous weapon; the court held that the government had not proved sufficiently that it was dangerous in that case. *See Harris,* 44 F.3d at 1214–16. In *Austin,* the court held that pulling the victim's head back and spraying mace into her mouth did not prove an aggravated assault with a "deadly" weapon. We find *Austin* unpersuasive because the statute required the weapon to be "deadly." *See Austin,* 336 So.2d at 481 n. 1 (quoting Fla. Stat. § 784.021 (1976)).

injuries were not permanent or protracted, i.e., the effect of the pepper spray did not cause Mr. Sparks serious physical harm. He cites Article 27, section 12(c) (1998 Cum.Supp.), which defines "serious physical injury" for the purposes of first-degree assault:

> (c) *Serious physical injury.*—"Serious physical injury" means physical injury which:
>
> . . . .
>
> (3) Causes serious ... protracted loss of the function of any bodily member or organ; or
>
> (4) Causes serious ... protracted impairment of the function of any bodily member or organ.

Assuming that petitioner's reference to the definition of this statute is correct,[5] the use of the pepper spray in the case *sub judice* did in fact cause the victim to suffer protracted loss or impairment of his vision. Mr. Sparks testified that he was blinded by the pepper spray for several hours and experienced a burning sensation in his eyes:

Q [State's Attorney]. You say he attacked you with pepper spray. What, if anything, did he do with that spray?

A [Mr. Sparks]. He continued to spray me. I tried to wrestle him with my right hand, which was my free hand. My other hand had my bag and my other mail in it.

Q. What, if any, part of your body did he spray?

A. My eyes, and he continued to spray as we wrestled a little bit. I fell to the ground. And when I fell to the ground, he picked up a bundle of my mail and took off.

Q. Now, sir, how did you know it was a spray that he used? What, if any, familiarity do you have with that kind of—

---

**5.** Section 12(a) states: "[*i* ]*n this subheading* [, "Assault,"] the following words have the meanings indicated." (Emphasis added.) The definition of "serious physical injury" contained in section 12(c), therefore, applies to the elements of the crime of first-degree assault in Article 27, section 12A–1 (1998 Cum.Supp.). Although this definition is persuasive for the purposes of this case, we do not address whether the definition may apply outside the assault context as petitioner infers it does.

A.   It burns on contact of the eyes.   We have a similar type [of] spray that I carry at all times for dogs.

. . . .

Q.   What kind of injuries did you receive, sir?

A.   The pepper spray just simply blinded me for several hours.   I had to keep water going in them to try and clear them up.

. . . .

Q.   Okay. And at the point that you're sprayed, what effect does that have on you physically? . . .

A.   You're trying to open your eyes, but it's spraying and it's burning. . . .

Q.   Okay, so it has a temporary effect which is basically to impair your vision.

A.   Little more than temporary.   It lasts for a while.   It lasts for quite a few minutes afterwards.

This testimony produced legally sufficient evidence that the pepper spray allegedly used by petitioner was used as a dangerous weapon under the second and third *Brooks* tests. Whether the pepper spray was actually used by the petitioner to rob Mr. Sparks depended on whether the jury believed, beyond a reasonable doubt, the testimony of the witnesses that the defendant sprayed pepper spray on the victim and then robbed him.   We note that in *Davis v. State*, 225 Md. 45, 168 A.2d 884 (1961), the defendants argued that the State could not prove that the handgun they used was loaded, and thus deadly, during the robbery in question.   There was eyewitness testimony that they showed a handgun to the victims to intimidate them in perpetration of the robbery.   We held that because the defendants "made no effort to rebut the prima facie proof that the weapon used in the robbery was dangerous or deadly, *the jury properly could have found that it was* [so used]."   *Id.* at 47, 168 A.2d at 885 (emphasis added). The *Davis* Court apparently agreed with the trial court that sufficient evidence existed for the jury to decide the issue of whether the defendants actually used the weapon to commit the robbery.   *Cf. Wadlow v. State*, 335 Md. 122, 129, 642 A.2d

213, 216 (1994) ("[R]obbery is ordinarily characterized as one offense, with the division between armed robbery and simple robbery being for the purpose of punishment, but the . . . determination of the seriousness of the offense is for the trier of fact." (citation omitted)). Other courts have also reserved for the determination of the trier of fact the issue of whether an object, which is deadly or dangerous as a matter of law if used as alleged, actually was so used during the crime. *See, e.g., United States v. Sturgis,* 48 F.3d 784, 788 (4th Cir.), *cert. denied,* 516 U.S. 833, 116 S.Ct. 107, 133 L.Ed.2d 60 (1995); *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir.1994); *United States v. Schoenborn,* 4 F.3d 1424, 1433 (7th Cir.1993); *Gooch v. State,* 652 So.2d 1189, 1191 (Fla.Dist.Ct.App.), *review denied,* 659 So.2d 1086 (Fla.1995); *State v. Bafford,* 255 Kan. 888, 897, 879 P.2d 613, 620 (1994); *Norris,* 236 Mich.App. at 415, 600 N.W.2d at 661; *Duckworth v. State,* 477 So.2d 935, 938 (Miss.1985); *State v. Smallwood,* 78 N.C.App. 365, 369, 337 S.E.2d 143, 145 (1985); *State v. Bennett,* 328 S.C. 251, 262, 493 S.E.2d 845, 851 (S.C.1997); *Triplett v. State,* 686 S.W.2d 342, 343 (Tex.App.1985, pet.ref'd), *overruled on other grounds by Brown v. State,* 716 S.W.2d 939, 950 n. 6 (Tex.Crim.App. 1986); *see also* 2 Charles E. Torcia, *Wharton's Criminal Law,* § 197, at 469 (CBC 1994).

██ The jury obviously believed that the pepper spray was actually used in the commission of a robbery under the facts of the case. We find no error in that determination. *See Veney v. State,* 251 Md. 182, 201, 246 A.2d 568, 579 (1968) ("[T]he Court of Appeals does not weigh the evidence presented to the jury, but only determines its sufficiency to take a particular issue, or the entire case, to the jury. To set aside the jury's verdict we must be able to say there was no legally sufficient evidence from which the jury could find him guilty beyond a reasonable doubt." (citation omitted)), *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969); *Braxton v. State,* 123 Md.App. 599, 657, 720 A.2d 27, 55 (1998) ("We defer to the factual findings of the jury . . . ."). As noted, *supra,* courts in other jurisdictions have held that pepper spray or mace was used as a dangerous weapon when the victims

suffered injuries similar to those experienced by Mr. Sparks in this case.

## B. Legislative Intent

Petitioner also argues that the legislative history of Article 27, section 36, supports his interpretation that pepper spray *per se* is not a dangerous weapon. He notes that, under section 36(a)(1), pepper spray is not included in the list of weapons that may not be worn or carried in a concealed manner:

> **§ 36. Carrying or wearing concealed weapon; carrying openly with intent to injure; carrying by person under eighteen at night in certain counties.**
>
> (a) *In general.*—(1) Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, chemical mace, pepper mace, or tear gas device openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor....

Art. 27, § 36(a)(1). He claims that the list of weapons in the first clause of section 36, which prohibits concealment, are *per se* dangerous or deadly weapons. Petitioner then implies that because "chemical mace, pepper mace, or tear gas device" are listed separately in the second clause of section 36, which prohibits "open" possession with intent to injure, they *per se* are not deadly or dangerous weapons. The placement of mace, pepper spray, and tear gas in only the second clause of section 36(a)(1) does not mean that those weapons can *never* be used in a deadly or dangerous manner. As we noted, *supra*, whether an object is capable of being used in a dangerous or deadly manner is a matter of law and whether the use of such an object in a particular way would constitute use of a dangerous or deadly weapon in the commission of a

criminal offense is a matter of law, but whether it was so used is a question of fact.

The legislative history further indicates that petitioner's argument is incorrect. Pepper spray was inserted within the original phrase "chemical mace or tear gas device" in 1994. 1994 Md. Laws, Chap. 373, § 1. The "chemical mace or tear gas device" phrase was added to section 36(a)(1) in 1980. 1980 Md. Laws, Chap. 343, § 1. As petitioner notes, the Legislature intended originally to add mace and tear gas to the first clause of the statute, which would have made it illegal to possess mace or tear gas in either an open or concealed fashion. Under the version passed, however, it is illegal only to wear or carry mace or tear gas (and, now, pepper spray) openly with the intent to injure:

> (a) Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, sandclub, metal knuckles, razor, nunchaku, ~~CHEMICAL MACE, OR TEAR GAS DEVICE~~ or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblade and handguns, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, *CHEMICAL MACE OR TEAR GAS DEVICE* openly with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor. . . .

*Id.* § 1; *see also* Art. 27, § 36(a)(1). Petitioner argues that this change indicates the Legislature's intent to remove mace, tear gas, and, subsequently, pepper spray from the list of *per se* deadly and dangerous weapons listed in the first clause of section 36(a)(1).

This Court has stated repeatedly that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *E.g., Board of License Comm'rs v. Toye,* 354 Md. 116, 122, 729 A.2d 407, 410 (1999) (quoting *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995)). Regarding our effort to discern legislative intent, we stated in *Rose v. Fox Pool Corp.,* 335 Md. 351, 359–60, 643 A.2d 906, 910 (1994):

When the language of a statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis of legislative intent is ordinarily required. *Kaczorowski*, 309 Md. at 515, 525 A.2d at 633. As we explained, however, in *Morris v. Prince George's County*, 319 Md. 597, 573 A.2d 1346 (1990):

> [O]ur endeavor is always to seek out the legislative purpose, the general aim or policy, the ends to be accomplished, the evils to be redressed by a particular enactment. In the conduct of that enterprise, we are not limited to study of the statutory language. The plain meaning rule " 'is not a complete, all-sufficient rule for ascertaining a legislative intention. . . .' " The "meaning of the plainest language" is controlled by the context in which it appears. Thus, we are always free to look at the context within which the statutory language appears. Even when the words of a statute carry a definite meaning, we are not "precluded from consulting legislative history as part of the process of determining the legislative purpose or goal" of the law.

319 Md. at 603–04, 573 A.2d at 1349 (citations and footnote omitted); *see also Baltimore Cty. C.A.U.T. v. Baltimore Cty.*, 321 Md. 184, 203–04, 582 A.2d 510, 519–20 (1990); *Kaczorowski*, 309 Md. at 513, 525 A.2d at 632. The legislative history of a statute, including amendments that were considered and/or enacted as the statute passed through the Legislature, and the statute's relationship to earlier and subsequent legislation are "external manifestations" or "persuasive evidence" of legislative purpose that may be taken into consideration. *Maryland Nat'l Bank v. Pearce*, 329 Md. 602, 619, 620 A.2d 941, 949 (1993) (*quoting Kaczorowski*, 309 Md. at 515, 525 A.2d at 632).

Materials in the bill file for Senate Bill 824, which ultimately passed and became Chapter 343, indicate that the proposal to add mace and tear gas to the list of dangerous weapons in section 36(a)(1) began when Lieutenant Richard Shores of the Salisbury Police Department sent a letter to Senator Joseph Long containing a newspaper article describing a robbery in

Salisbury in which the assailant sprayed the employees of an insurance company in the face with mace before fleeing with $15,000 in cash and checks. Lieutenant Shores expressed concern that the suspect was not charged and tried under section 488. *See generally* Letter from Lt. Richard Shores to Sen. Joseph Long (Apr. 19, 1979). A letter from the Office of the Attorney General to Senator Long during the following legislative session indicates that the legislation was intended "to prohibit the use of tear gas devices *as offensive weapons.*" *See* Letter from Deborah Handel (now federal Judge Deborah Chasanow) to Sen. Joseph Long, at 1 (Jan. 31, 1980) (emphasis added). The letter suggested that section 36(a)(1) already covered tear gas and mace as dangerous weapons by implication, but that the section could be amended to include tear gas and mace expressly. The letter also noted that the defensive use of mace and tear gas might be covered by the exception, currently embodied in subsection (f)(4), for wearing or carrying dangerous weapons "as a 'reasonable precaution against apprehended danger.'" *See id.*

These letters indicate that Senate Bill 824 was passed specifically to prevent citizens from being able to possess weapons such as mace, tear gas, and, subsequently, pepper spray, for use as an offensive weapon, particularly in the robbery context. Though the legislative history does not reveal exactly why the change in language was made prior to the passage of Senate Bill 824, we infer that the change was made, despite the existence of subsection (f)(4), to protect those who might carry such weapons for defensive, protective purposes. Quite simply, the General Assembly did not want to make it illegal for citizens to protect themselves from criminals by wearing or carrying mace, tear gas, or pepper spray in a concealed fashion. They did, however, want to prevent criminals, including robbers, from using such weapons in an open manner with intent to injure their victims.

Finally, petitioner argues that

[i]f the legislature had deemed pepper mace (or chemical mace or tear gas devices) to be a dangerous or deadly weapon, it could have amended § 36 as follows:

Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife, star knife, sandclub, metal knuckles, razor, nunchaku, or any other dangerous or deadly weapon of any kind, whatsoever (penknives without switchblades, handguns, and *chemical mace, pepper mace, or tear gas devices*, excepted) concealed upon or about his person, and every person who shall wear or carry any such weapon, openly with the intent or purpose of injuring any person in any unlawful manner. . . .

Petitioner's interpretation of this hypothetical version of section 36(a)(1) is incorrect; we note that this hypothetical is precisely how the Legislature could have worded section 36(a)(1) had it desired to exclude pepper spray completely from being treated as a dangerous weapon. By placing pepper spray within the "penknives" exception clause, the Legislature could have excluded it from the statute. As noted, *supra*, however, the General Assembly did add pepper spray to the list of dangerous weapons in section 36(a)(1), but chose to exclude from prosecution those who wear or carry pepper spray in a concealed fashion for defensive purposes by placing pepper spray only in the second clause of section 36(a)(1).

## III. Conclusion

Whether an object used in a robbery or in an attempted robbery may constitute a dangerous or deadly weapon for the purposes of section 488 is a question of law. Whether the use of an object in a specific way constitutes a criminal offense is a matter of law. Whether the object used by the defendant was used in that specific way in the context of a particular case is a question of fact. In this case, there was sufficient evidence for the jury to determine the issue of whether the pepper spray, alleged to have been sprayed into the face of the victim, and thus used in a deadly or dangerous manner by petitioner, was in fact sprayed into the victim's face during a robbery. The evidence supported the jury's finding that petitioner's spraying of pepper spray, which is designed for defensive combat, into the victim's eyes, causing him pain

and blindness for several hours, was the use of a dangerous weapon during the commission of a robbery. We affirm petitioner's conviction for robbery with a dangerous or deadly weapon.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**