# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ADRIAN RODRIGUEZ,

      Defendant-Appellant.

UNPUBLISHED
June 14, 2018

No. 336701
Wayne Circuit Court
LC No. 16-006583-01-FC

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of assault with intent to do great bodily harm less than murder, MCL 750.84, two counts of felonious assault, MCL 750.82, carrying a weapon with unlawful intent, MCL 750.226, carrying a concealed weapon, MCL 750.227, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and resisting arrest, MCL 750.81d(1).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 10, 2016, at approximately 1:00 a.m., Chris McTaggart and John Deeg drove to Cardoni's Bar in Detroit. While they sat at the bar, defendant approached McTaggart and tapped him on the arm several times. McTaggart testified that he knew defendant as "Nino," and had known him for about eight months. When McTaggart failed to respond to him, defendant punched McTaggart in the face. McTaggart reciprocated, causing defendant to fall down. A short scuffle took place, defendant and McTaggart were separated, and defendant was removed from the bar. McTaggart and Deeg were permitted to remain.

McTaggart and Deeg later left the bar in McTaggart's silver Ford Explorer. As they headed down Whitlock Street, they noticed a dark SUV speeding up behind them. The SUV passed the Explorer on the driver's side, cut it off, and stopped so as to block the Explorer from moving forward. McTaggart testified that defendant got out of the passenger side of the SUV with a handgun in his left hand, began walking toward the Explorer, swung the gun back and

---

[1] The jury acquitted defendant of one count of assault with intent to murder, MCL 750.83.

-1-

forth, and ultimately pointed the gun at the vehicle. McTaggart quickly put the Explorer in reverse and was able to escape down a side street. But McTaggart and Deeg soon saw the SUV approaching them from behind at a high rate of speed. Deeg called 911 for assistance, as McTaggart headed for the Dearborn Police Station. The SUV continued chasing the Explorer for several miles until McTaggart slowed down to enter a turnaround, at which point the SUV overtook them. When the SUV pulled up next to the passenger's side of the Explorer, Deeg saw the passenger in the SUV "lean[] across the driver's seat" and fire two shots toward the passenger window of the Explorer. One of the bullets hit Deeg in the head. The chase ended when McTaggart headed toward Oakwood Hospital, and the SUV sped off. Deeg was treated for the gunshot wound as well as wounds from broken glass, both of which caused him serious injuries and left him hospitalized for several days. While neither McTaggart nor Deeg actually saw who pulled the trigger, they testified at trial that the SUV that defendant had exited while carrying a gun on Whitlock Street was the same vehicle that shortly thereafter pulled up next to them and from which the gunshots were fired.

Dearborn Police Officer Steven Vert observed a black Yukon SUV in the area in which McTaggart and Deeg had been chased. The Yukon ran a red light and did not immediately stop when Officer Vert activated his vehicle's overhead lights. The Yukon eventually stopped and parked in the driveway of a house located at 6464 Woodmont. Defendant was in the driver's seat of the vehicle. His son, Adrian Rodriguez, Jr., exited from the passenger side of the vehicle and ran into the house. Defendant initially complied with Officer Vert's commands to turn off the vehicle's engine, show his hands, exit the vehicle, walk backward toward the officer, and get on his knees. But as police backup arrived, defendant tried to run into the house and then resisted as officers attempted to place handcuffs on him.

McTaggart and Deeg testified at trial. Surveillance video from Cardoni's Bar confirmed the altercation between McTaggart and defendant. Officer Vert also testified at trial. Video taken by the police confirmed the chase and subsequent arrest of defendant and his son. A portion of Deeg's 911 call was played at trial, confirming that McTaggart and Deeg had reported being involved in a high-speed chase. No firearms were recovered from the Yukon, or from defendant or his son.

At the close of the testimony, defendant moved for a directed verdict, arguing that no reasonable juror could find him guilty of the crimes charged. The trial court denied defendant's motion. The jury convicted (and partially acquitted) defendant as described.

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the trial court erred when it denied his motion for a directed verdict with regard to the assault with intent to do great bodily harm less than murder charge because the evidence was insufficient to prove that he participated directly in, or aided and abetted, the

shooting.[2]  We disagree.  We review de novo a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).  Generally, "[i]n reviewing a trial court's decision regarding a motion for directed verdict, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (citation and quotation marks omitted).  "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation and quotations marks omitted).  "[T]his Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Lee*, 243 Mich App 163, 167; 622 NW2d 71 (2000).

"The elements of assault with intent to do great bodily harm less than murder are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (citation, quotation marks and footnote omitted; emphasis in original).

At trial, the prosecution argued that defendant was guilty of assault with intent to do great bodily harm less than murder either as a principal or as an aider and abettor.  The elements of aiding and abetting are:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement.  [*People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (citation omitted).]

When viewed in the light most favorable to the prosecution, we conclude that ample evidence supported the trial court's denial of a directed verdict, and defendant's ultimate conviction, on the charge of assault with intent to do great bodily harm less than murder, both as a principal and under an aiding and abetting theory.

Viewing the facts in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of assault with intent to do great bodily harm were proved beyond a reasonable doubt.  *Schrauben*, 314 Mich App at 198.  Both McTaggart and Deeg testified that a person riding in the SUV shot a gun into their vehicle, which is clearly an assault. Deeg was concerned for his safety as the SUV pulled next to them.  He was yelling at McTaggart

---

[2] The felony assault charges were based on defendant's earlier encounter with McTaggart and Deeg at Cardoni's Bar.  As stated, defendant was ultimately acquitted of assault with intent to commit murder for the shooting; therefore, although defendant also argues that the trial court should have granted a directed verdict on that charge, any error regarding that charge was harmless.  See *People v Anderson (After Remand)*, 466 Mich 392, 406; 521 NW2d 538 (1994).

not to slow down and was in the process of trying to lower the passenger seat so that he could lie down out of sight. Deeg's concern was warranted because, as McTaggart slowed down, the shooter took that opportunity to shoot two bullets into the Explorer at close range. One of the two shots hit Deeg in the head, causing injuries. Both shots were fired directly into the passenger window at head level precisely at the point in time when the Explorer slowed down and the SUV was able to pull up as close as possible to it. The circumstances surrounding the shooting, together with the resultant head injury caused by multiple shots from a deadly weapon, was evidence the jury could have used to infer, at the very least, defendant's intent to do great bodily harm, if not to kill.

While defendant concedes his involvement in the chase of the Explorer, he argues that the prosecution could not establish whether defendant or his son was the actual shooter. A rational jury could have found either that defendant was the principal or that he aided and abetted the principal in shooting Deeg. An aider and abettor is treated the same under the law as the principal. See *People v Robinson*, 475 Mich 1, 9; 715 NW2d 44 (2006). But a defendant's "mere presence," even with the knowledge that a crime is about to be committed, does not establish that the defendant aided and abetted the commission of the crime. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

Here, however, the evidence does not support defendant's contention that he was "merely present" at the scene of the crimes and did not aid in their commission. *Id*. Rather, the record demonstrates that defendant acted as a willing and active participant in the shooting. Defendant punched McTaggart at Cardoni's Bar and was removed from the premises. Defendant waited for McTaggart and Deeg to leave the bar and get into the Explorer, whereupon the SUV in which defendant was riding initiated an encounter with the Explorer and forced it to stop. Defendant got out of the SUV with a handgun and walked toward the Explorer. After McTaggart and Deeg escaped, the SUV (with defendant inside) continued to pursue them until one of the occupants was able to fire two shots into the Explorer. The SUV fled the scene and ignored police commands to stop. Police found defendant in the driver's seat of the SUV. Defendant then resisted arrest. We conclude that the evidence was sufficient to support the trial court's denial of defendant's motion for directed verdict and defendant's conviction, either as the principal or an aider and abettor. *Schrauben*, 314 Mich App at 198.

### III. OFFENSE VARIABLE SCORE

Defendant also argues that the trial court erred by its assessment of points for offense variables (OVs) 3, 10, and 14[3] at sentencing, which altered the recommended guidelines minimum sentence range and thus requires resentencing. We disagree. Defense counsel objected to the scoring of OVs 3, 10, and 14 at sentencing, thereby preserving those issues for appellate review. In reviewing a defendant's claim that the trial court assigned an improper

---

[3] While defendant's statement of questions presented reflects that he is challenging OVs 3, 10, 14, 17, and 19, he presents no argument concerning OVs 17 and 19 and has thus abandoned his challenge to those variables. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

score to an offense variable, we review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence. *Schrauben*, 314 Mich App at 196. We review de novo the trial court's interpretation and application of the guidelines. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Defendant first asserts that his OV 3 score of 25 points was erroneous and that OV 3 should have been scored at no more than 10 points. We disagree.

MCL 777.33(1)(c) prescribes a score of 25 points where the offender caused a victim to suffer from a "[l]ife threatening or permanent incapacitating injury." MCL 777.33(1)(d) prescribes a score of 10 points when "[b]odily injury requiring medical treatment occurred to a victim." " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

Deeg testified at trial regarding the nature and extent of his injuries, explaining that he was shot in the head, which caused his brain to bleed and required hospitalization for several days. Deeg testified that he received 20 stitches on the inside of his head and 20 stitches on the outside. Additionally, Deeg's eyes were swollen shut from the shattered glass that was propelled into his face by the gunshot, that over a hundred pieces of glass had penetrated his face, and that he has lifelong scarring on his face. Deeg also explained that, due to the seriousness of the injury, he required follow-up brain scans even up to the time of trial. On this record, a preponderance of the evidence supports the trial court's conclusion that the gunshot wound that Deeg sustained to his head was a life-threatening injury. For these reasons, the trial court properly assessed 25 points for OV 3. See *People v McCuller*, 479 Mich 672, 697; 739 NW2d 563 (2007) (holding that the trial court properly assessed 25 points for OV 3 when a victim was struck violently in the head causing a concussion and requiring a multiple-day hospitalization).

Defendant next argues that he should have been assessed zero points for OV 10, because the prosecution failed to show exploitation of a victim or predatory conduct justifying the assessment of points under this variable. We disagree. The trial court assessed 15 points for OV 10, which is appropriate when a defendant exploits a vulnerable victim and "[p]redatory conduct was involved." MCL 777.40(1)(a). "Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). " 'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). In *People v Cannon*, 481 Mich 152, 158; 749 NW2d 257 (2008), our Supreme Court explained "that points should be assessed under OV 10 only when it is readily apparent that a victim was 'vulnerable,' i.e., was susceptible to injury, physical restraint, persuasion, or temptation." The Court stated that to qualify as predatory conduct, the conduct "must have occurred before the commission of the offense." *Id*. at 160. The conduct also must have been " 'directed at a victim' before the offense was committed." *Id*. The Court set forth three "analytical questions" to aid "in determining whether 15 points are properly assessed under OV 10":

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40. [*Id.*, 481 Mich at 161-162.]

In *People v Huston*, 489 Mich 451; 802 NW2d 261 (2011), the defendant and his cohort waited in a dark parking lot. When a solitary woman came to her car, the two offenders pointed BB guns at her and demanded her purse, wallet, and car keys. The cohort pushed the woman to the ground and cut the purse from her shoulder. Both defendant and the cohort fled in the victim's vehicle. *Id*. at 455. Our Supreme Court held that the "defendant's preoffense conduct of predatorily lying in wait, armed, and hidden from view" constituted predatory conduct under OV 10. *Id*. at 463. The Court disagreed with this Court's conclusion "that the victim was not 'vulnerable' because there was nothing in the record to indicate that she suffered from an *inherent* or *personal* vulnerability." *Id*. at 464 (emphasis in original). The Supreme Court stated that "subdivision (a) does not list any specific characteristics, relationships, or circumstances of the victim. Rather, that subdivision merely requires that '[p]redatory conduct was involved' in order to assess 15 points for OV 10. MCL 777.40(1)(a)." *Huston*, 489 Mich at 465. The Court concluded that OV 10's statutory language "does not mandate that this 'susceptibility' be *inherent* in the victim. Rather, the statutory language allows for susceptibility arising from external circumstances as well." *Id*. at 466.

Here, McTaggart and Deeg remained at Cardoni's Bar for a period of time after defendant was removed from the bar. When McTaggart and Deeg left the bar, defendant was already in position and moved to follow and assault them. McTaggart and Deeg did not suspect that defendant was waiting for them to leave the bar, armed with a handgun, and prepared to pursue them in a high speed chase for several miles before assaulting them. This conduct is comparable to the conduct in *Huston*, in which the defendant waited at a location in a parking lot in anticipation of the opportunity to rob the victim. The evidence was sufficient to establish predatory conduct by a preponderance of the evidence. Accordingly, the trial court did not err by assessing 15 points for OV 10. See *Huston*, 489 Mich at 463.

Finally, defendant argues that he should have been assessed zero points for OV 14 because there was no evidence beyond speculation regarding whether defendant had acted as a leader in a multiple offender situation. We disagree. Under MCL 777.44(1)(a), 10 points are assessed for OV 14 when "[t]he offender was a leader in a multiple offender situation." In making this determination, "[t]he entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a).

Here, the trial court determined that defendant had acted as the leader in the chase and shooting, given that defendant had been involved in a fight with McTaggart at the bar, got out of

-6-

the SUV with a handgun on Whitlock Street, was the "aggrieved person" in the situation while accompanied by his son, and, when stopped by the police after the car chase, was found to have been the driver of the SUV. The record evidence supports the trial court's assessment of 10 points for OV 14. McTaggart testified that he knew defendant and did not like him. Video evidence presented at trial shows that defendant was the antagonist in the altercation with McTaggart at Cardoni's Bar. After punching McTaggart, defendant was removed from the bar while McTaggart was allowed to remain. McTaggart testified that defendant was the person who brandished the handgun on Whitlock Street. And after the high-speed chase and the shooting, defendant was discovered to have been the driver of the SUV. Moreover, there was no testimony that either McTaggart or Deeg knew defendant's son. On this record, a preponderance of the evidence supports the trial court's conclusion that defendant was the impetus behind the criminal acts committed and acted as the leader in this multiple offender situation. For these reasons, the trial court properly assessed 10 points for OV 14.

Because defendant has demonstrated no errors in the scoring of his sentencing guidelines or inaccurate information relied upon by the trial court, and his minimum sentence fell within his recommended minimum sentence range, we affirm his sentence.[4] MCL 769.34(10).

Affirmed.

/s/ Brock A. Swartzle
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra

---

[4] Although defendant asserts that his sentence was unreasonable and disproportionate, his argument is premised on the inaccuracy of the challenged OV scores. Because we find no error with those scores and defendant's sentence is within the sentencing guidelines, it is presumptively proportionate and we must affirm it, absent other unusual circumstances that would render it disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013); MCL 769.34(10). Defendant has presented no such circumstances.