*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 25, 2021

Plaintiff-Appellee,

v

No. 349984
Washtenaw Circuit Court
LC No. 18-000635-FC

ISOM MARTEZ NYGEL HAMILTON,

Defendant-Appellant.

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

PER CURIAM.

Defendant, Isom Martez Nygel Hamilton, appeals by right his convictions of first-degree murder (felony murder), MCL 750.316(b); armed robbery, MCL 750.529; first-degree arson, MCL 750.72(1)(b); and mutilation of a dead body, MCL 750.160. Defendant was found guilty after a four-day bench trial. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve a prison sentence of life without parole for the felony-murder charge, and 50 to 75 years' imprisonment for each of the other charges. We affirm.

## I. PERTINENT FACTS

This appeal arises from the murder of Robert Sharp on June 10, 2018. On that night, inside of his home, Mr. Sharp was stabbed 28 times with a knife from his kitchen. At least five of the resulting wounds were determined to be fatal. Mr. Sharp's body was dragged from the kitchen to the basement, where debris was placed on top of it and set on fire. Although defendant's DNA and fingerprints were not found anywhere in Mr. Sharp's home, cellphone data indicated that defendant was in the geographic area of Mr. Sharp's home. Other evidence indicated that someone unsuccessfully attempted to use an Internet-based service to transfer $2,000 from Mr. Sharp's credit card to defendant's account that night. The credit card was found on top of Mr. Sharp's body. Further, when defendant was arrested, he was in possession of numerous items, including laptops and other electronic devices that were purchased by Mr. Sharp. Other items purchased by Mr. Sharp were also found with defendant's property at defendant's grandmother's house.

On June 6, 2018, only days before Mr. Sharp's death, Mr. Sharp reported to police that his home had been broken into and that several electronic items had been stolen. Mr. Sharp also

-1-

informed the police that his laptop, briefcase, and Wi-Fi hotspot device had been stolen at a Wendy's restaurant several weeks prior to the June 6, 2018 incident. The prosecutor introduced evidence of the 2018 thefts and an unrelated 2012 home invasion committed by defendant under MRE 404(b).

A week and a half before trial, defendant's attorneys filed a motion to withdraw as counsel, at defendant's request, citing a grievance defendant filed against them as the reason. The trial court denied the motion. Defendant was convicted on the basis of multiple items of circumstantial evidence.

Defendant raises three issues in this appeal. First, defendant argues that the trial court abused its discretion by denying his attorneys' motion to withdraw. Next, defendant argues that the trial court erred by admitting other-acts evidence of a 2012 home invasion and 2018 thefts. Finally, defendant argues that there was insufficient evidence supporting his convictions. Although we conclude that the trial court abused its discretion by admitting evidence of the 2012 prior act, we conclude that the error was harmless. We disagree with defendant's remaining arguments and affirm his convictions.

## II. WITHDRAWAL OF COUNSEL

Defendant argues that the trial court abused its discretion in denying his counsel's motion to withdraw as his counsel and contends that the trial court erred in finding that he had not demonstrated good cause. Defendant's attorneys brought a motion to withdrawal as counsel at defendant's request approximately one and a half weeks before trial. The motion stated that a grievance filed by defendant against his attorneys created a conflict of interest. In addition, defendant accused his attorneys of lying and rendering inadequate representation. Defendant asserts that these claims established good cause for the trial court to grant replacement of his counsel. We disagree.

"A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016) (quotation marks and citation omitted).

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." US Const, Am VI.

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660, 662 (2011) (quotation marks and citations omitted).

-2-

The filing of a grievance, without more, has been found by this Court to be an insufficient cause for substitution. *Traylor*, 245 Mich App at 463. Additionally, "[a] mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause." *Strickland*, 293 Mich App at 398. "Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id.*

Defendant alleged, without support, that his counsel prejudiced his case, were not legally competent, and lied about motions being filed. Both attorneys stated that they did not lie to defendant or incompetently represent him. Without more, defendant's allegations lack merit. Therefore, defendant failed to establish good cause as required. Additionally, defendant waited less than two weeks before trial to request new counsel. A substitution of counsel at that point could have also unreasonably delayed the judicial process. The trial court did not abuse its discretion by denying defense counsel's motion to withdraw.

## III. OTHER-ACTS EVIDENCE

Defendant argues that the trial court abused its discretion by admitting MRE 404(b) other-acts evidence of: (1) a 2012 home invasion; (2) a 2018 theft at Wendy's; and (3) a June 6, 2018 break-in and theft. Defendant asserts that the other-acts evidence was not offered for a proper purpose and that the evidence was only offered for propensity purposes. Although the trial court abused its discretion by admitting evidence of the 2012 home invasion, the error was harmless. The trial court did not abuse its discretion by admitting the 2018 other-acts evidence.

## A. STANDARD OF REVIEW

A trial court's evidentiary decision is also reviewed for an abuse of discretion. *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo. A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017).

## B. ANALYSIS

The admission of other-acts evidence is controlled by MRE 404(b):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), the Michigan Supreme Court articulated the following standard for addressing the admissibility of evidence under MRE 404(b):

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

With respect to the first prong of the *VanderVliet* test, our Supreme Court has explained as follows:

[T]he question is whether the prosecution has articulated a proper noncharacter purpose for admission of the other-acts evidence. The prosecution bears the burden of establishing that purpose. MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. On the other hand, such other-acts evidence may be admissible whenever it is also relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1). [*Denson*, 500 Mich at 398-399 (citations omitted).]

MRE 404(b) provides a "nonexclusive list of examples of situations in which the general rule excluding character evidence, MRE 404(a), is not offended because the evidence is probative of some fact other than the defendant's criminal propensity." *VanderVliet*, 444 Mich at 66 (quotation marks and citation omitted). Importantly, our Supreme Court cautioned that "merely *reciting* a proper purpose does not actually demonstrate the *existence* of a proper purpose for the particular other-acts evidence at issue and does not automatically render the evidence admissible." *Denson*, 500 Mich at 400.

Trial courts must "closely scrutinize the logical relevance of the evidence under the second prong of the *VanderVliet* test" to determine whether an articulated purpose is proper. *Id*. "That is, the prosecutor must explain how, and demonstrate, that the other-acts evidence is logically relevant to the stated purpose without relying on an impermissible propensity inference." *People v Galloway*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 352937); slip op at 4. "Other-acts evidence is logically relevant if two components are present: materiality and probative value." *Denson*, 500 Mich at 401.

For the other-acts evidence to be material, it must be related to a fact or issue of consequence in the determination of the case. For that same evidence to have probative value, it must have a tendency to make the purported fact of consequence more or less probable than it would be without that evidence. The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material. [*Galloway*, ___ Mich App at___; slip op at 4 (quotation marks and citations omitted).]

"[T]he proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *Denson*, 500 Mich at 402 (quotation marks and citation omitted). The court must examine "the similarity between a defendant's other act and the charged offense" to evaluate "whether the prosecution has provided an intermediate inference other than an

impermissible character inference[.]" *Id*. "The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence." *Id*. at 402-403. To be admissible when its theory of relevance is based on the alleged similarity of the two acts, the prosecution is required to show a "striking similarity" between the other act and charged offense. *Id*. at 403.

> For example, when the theory of relevance of the other-acts evidence is to identify the defendant as the perpetrator of the charged crime considering the uncommon or distinctive similarity of the facts and circumstances of both the uncharged and charged offenses, there must be a high degree—or striking—similarity so as to "earmark the charged offense as the handiwork of the accused," i.e., the defendant's "signature." [*Galloway*, ___ Mich App at___; slip op at 5 (brackets and citation omitted).]

"[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). However, "[g]eneral similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Id*. at 64. Where the other-act "consists merely in doing of other similar acts" there must be "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." *Id*. at 64-65 (quotation marks, emphasis, and citation omitted).

The third prong of the *VanderVliet* test requires application of MRE 403. *VanderVliet*, 444 Mich at 74-75. MRE 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony" by the trial judge. *VanderVliet*, 444 Mich at 81.

### 1. 2012 HOME INVASION

Defendant argues that the 2012 home invasion was improperly admitted under MRE 404(b) because it lacked sufficient similarity to warrant admission. We agree.

In this case, the prosecutor presented other-acts evidence under MRE 404(b) regarding the 2012 home invasion. The prosecutor offered the other-acts evidence to prove the identity of the perpetrator and to show the method or operation the perpetrator used in committing the crimes. The prosecutor asserted that the other acts were of "a similar nature to the charged act and had a 'concurrence of common feature' that were "naturally explained as individual manifestation of a general plan."

Our Supreme Court has required that, in addition to *Denson*, a reviewing Court "shall apply [*People v Golochowicz*, 413 Mich 298, 310-311; 319 NW2d 518 (1982)] to determine whether the other-acts evidence [is] admissible to prove identity." *People v Chandler*, 502 Mich 879; 912

NW2d 859 (2018). To be admissible under the *Golochowicz* standard, four requirements must be met:

> "(1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. [*People v Waclawski*, 286 Mich App 634, 673; 780 NW2d 321 (2009) (quotation marks and citation omitted).]

The prosecutor argued that evidence of a 2012 home invasion committed by defendant was admissible under MRE 404(b) because it was similar to the instant offense because in each instance defendant broke into residential homes that were owned by older male professors and stole electronic items. The prosecution also argued that the prior act was similar because defendant threatened to shoot and kill the 2012 victim and defendant allegedly killed Mr. Sharp in the instant offense.

With regard to the first *Golochowicz* requirement, there is no question that substantial evidence existed that defendant committed the prior act because he was convicted of the crime and defendant does not argue that he did not commit it. However, the prosecutor has failed to establish some "special quality of the act" that tends to prove defendant's identity. *Id*. Where the other-acts evidence is offered to prove identity, "the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused." *Golochowicz*, 413 Mich at 310. "The commonality of circumstances must be so unusual and distinctive as to be like a signature" and "much more is demanded than the mere repeated commission of crimes of the same class." *Id*. at 310-311 (quotation marks, brackets, and citation omitted).

Looking to the similarities between the 2012 prior act and instant offense, there are several factors that weigh against a finding that the two acts were sufficiently similar. The prior offense occurred in 2012, six years before the instant offense. Mr. Sharp was not the victim of the 2012 home invasion. Unlike the instant offense, there was evidence that defendant used force to break into the victim's home in 2012. Additionally, defendant threatened to shoot the 2012 victim, but in this case the weapon used was a knife. Further, defendant admitted that he entered the victim's home in 2012 and took a backpack filled with electronics. However, in the instant offense, defendant told police that he did not know where Mr. Sharp lived and denied any involvement with his death or stolen property. The only apparent similarities between the instant offense and the 2012 prior act are that each victim was an older male who happened to be a professor and had electronic devices stolen from their homes. Based on these similarities, it cannot be said that the "circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the accused." *Id*. at 310-311 (quotation marks, brackets, and citation omitted). Rather, it appears that the prior act was merely of a similar class of crime that defendant was charged with in the instant case, which does not by itself justify admission of the evidence. *Id*.

The third *Golochowicz* requirement is also not satisfied. The 2012 act was not related to any fact that was of consequence. Although defendant denied any involvement in the instant offense, making identity a material issue at trial, the 2012 prior act was not sufficiently similar to the instant offense to warrant its admission as evidence of defendant's identity. Additionally, the evidence was not material to any other issue. As indicated, "the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *Denson*, 500 Mich at 402 (quotation marks and citation omitted). Therefore, the evidence should have been excluded.

Finally, with regard to the fourth *Golochowicz* requirement, "[u]nfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Danto*, 294 Mich App at 600 (quotation marks and citation omitted). "Unfair prejudice may arise where considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock, are injected." *Id*. In this case, the danger of unfair prejudice was minimal because it was a bench trial. "Unlike a jury, a judge is presumed to possess an understanding of the law, which allows [the judge] to understand the difference between admissible and inadmissible evidence or statements of counsel." *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992).

In summary, the trial court abused its discretion by admitting evidence of the 2012 prior act under MRE 404(b) because it was not offered for a proper purpose. However, we concluded that the error was harmless.

"Preserved nonconstitutional errors are subject to harmless-error review under MCL 769.26[.]" *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). "[A] preserved nonconstitutional error is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *Denson*, 500 Mich at 409 (quotation marks and citations omitted). For the reasons stated in Part IV of this opinion, there was ample circumstantial evidence apart from the 2012 evidence from which the judge could find that defendant was the perpetrator of the instant offenses.

## 2. 2018 THEFTS

Defendant argues that the trial court also abused its discretion by admitting evidence regarding the June 6, 2018 break-in of Mr. Sharp's home because there was no evidence that he committed the crimes alleged. We disagree.

The prosecutor introduced evidence of two prior acts from 2018 that occurred before Mr. Sharp's death. On June 6, 2018, Mr. Sharp reported to the police that he came home and found his back door unlocked and electronic items had been taken. He reported that his spare car keys, two Roku[1] devices, a silver Google Chromebook laptop, and a new cellphone had been stolen. Mr.

---

[1] A Roku device is a device used to stream television content through the internet. Roku, *How does Roku work?* <https://www.roku.com/how-it-works> (accessed January 29, 2021).

Sharp also reported that his briefcase with a laptop and mobile hotspot device had been stolen while he was at Wendy's a few weeks before the June 6, 2018 break-in.

Regarding the first *Golochowicz* requirement, substantial circumstantial evidence existed that defendant committed the prior acts. Mr. Sharp frequented the Wendy's where defendant worked. Defendant was working at Wendy's during the period of time when Mr. Sharp's laptop, briefcase, and hotspot device were stolen. The June 6, 2018 break-in occurred a few weeks after the theft at Wendy's. Defendant stopped showing up for shifts at Wendy's approximately one or two weeks before Mr. Sharp's death, and the June 6, 2018 break-in occurred only days before Mr. Sharp's death. When defendant was arrested on June 27, 2018, he was found with some of the items that were stolen from Mr. Sharp, including two Apple laptop computers, one purchased by Mr. Sharp in January 2017 and the other less than two weeks before he was murdered, and a hotspot device that was purchased in January 2017 and reported stolen at Wendy's by Mr. Sharp a few weeks before June 6, 2018. Further, pursuant to a search of defendant's property at his grandmother's home, police found a tablet that was purchased by Mr. Sharp in May 2017 and two Roku devices.

Regarding the second *Golochowicz* requirement, the prior 2018 acts had several similarities and circumstances common to the instant offense. The prior acts occurred within 2 months of the instant offense and involved the same victim, Mr. Sharp. As indicated, defendant was in possession of multiple items that were stolen from Mr. Sharp. Additionally, the evidence could have been offered to prove motive, opportunity, or knowledge that defendant knew where the victim lived and had previously taken electronic items.

The third *Golochowicz* requirement is also satisfied. The prior acts were a chain of events that provided context to the events leading up to the death of Mr. Sharp. From the laptop or from other contents of Mr. Sharp's briefcase, the trier of fact could draw a reasonable inference that defendant knew where Mr. Sharp lived. The evidence was logically relevant because it explained how defendant came to be in possession of Mr. Sharp's stolen items and that defendant had previously stolen electronic items from Mr. Sharp. Lastly, the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice. As indicated, this case involved a bench trial and the risk of unfair prejudice to defendant was minimal. Therefore, the 2018 prior-acts evidence was admissible under MRE 404(b) and the trial court did not abuse its discretion by admitting it.

## IV. SUFFICIENCY OF EVIDENCE

Defendant argues that there was insufficient evidence admitted to support his convictions of felony murder, armed robbery, arson, and disinterment and mutilation of a dead body because there was insufficient evidence for a trier of fact to find beyond a reasonable doubt that he committed the crimes. Defendant's primary argument is that there was insufficient evidence to prove that he was the perpetrator of the crimes. We disagree.

## A. STANDARD OF REVIEW

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "In determining whether sufficient evidence exists to

sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. *Id*. (quotation marks and citation omitted). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## B. ARMED ROBBERY

Defendant argues that there was insufficient evidence that he committed armed robbery because there was no evidence that he was in the presence of Mr. Sharp on June 10, 2018 or June 11, 2018. Defendant also argues that there was no evidence that established that the property found in defendant's possession after his arrest was in the possession of Mr. Sharp on June 10, 2018 or June 11, 2018.

"The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in [MCL 750.529] statute." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted). MCL 750.529 provides, in pertinent part:

> A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years.

MCL 750.530 provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

The determination of whether an object is a "dangerous weapon" depends upon the object itself and the manner in which it is used. *People v Norris*, 236 Mich App 411, 414-415; 600 NW2d 658 (1999). We have noted that "a dangerous weapon has been described as either (1) a weapon designed to be dangerous and capable of causing death or serious injury (e.g., a loaded gun) or (2)

any other object capable of causing death or serious injury that the defendant used as a weapon (e.g., a screwdriver used as a knife)." *Id*. at 415.

There was sufficient evidence from which a rational tier of fact could conclude that defendant was guilty of armed robbery. The deceased victim was found inside of his home and his body had multiple stab wounds and burns, indicating that he was assaulted. Two knives were missing from Mr. Sharp's kitchen. Pieces of a knife found on the floor of Mr. Sharp's kitchen matched the knife piece recovered from Mr. Sharp's neck. Two defensive wounds were found on Mr. Sharp's hand, indicating that he tried to defend himself.

According to testimony, the crimes must have occurred between 8:00 or 9:00 p.m. on Sunday, June 10, 2018, and 12:00 p.m. on Monday, June 11, 2018. Although defendant told police that he was at his grandmother's home during this time, surveillance video showed him at a gas station at 7:53 p.m. on June 10, 2018, carrying a blue backpack, and he was seen on the same security video carrying a second bag and with a red stain on his pants again at 2:40 a.m. on June 11, 2018.

Although neither defendant's DNA nor his fingerprints were recovered from the crime scene, the fact finder could have reasonably inferred from the circumstantial evidence that defendant was the perpetrator of the armed robbery. An analysis of defendant's cell phone data indicated that his phone was used on June 10, 2018, while in a geographical area that included Mr. Sharp's home, between 11:24 p.m. and 11:35 p.m. Other evidence indicated that someone unsuccessfully attempted to use an Internet-based service to transfer $2,000 from Mr. Sharp's credit card to defendant's account at 11:27 p.m., and testimony from a bank representative indicated that the person making the transfer had access to Mr. Sharp's card at the time of the transfer. The credit card used in the attempted transfer was found in the debris pile on top of Mr. Sharp's body. The timing of the attempted money transfer matches the time that defendant's cellphone was used in the geographic area that included Mr. Sharp's home.

Further, at the time of his arrest, defendant was in possession of numerous electronic items that were purchased by the victim, including two laptop computers. Defendant told police that he bought one of the laptops months before Mr. Sharp's death. However, Mr. Sharp purchased it from Best Buy less than two weeks before he was murdered. Additionally, testimony indicated that Mr. Sharp used this laptop on the night that he was killed. Therefore, a reasonable inference could be made that defendant took the computer from Mr. Sharp's home on the night that he was murdered. A flashlight was also found in defendant's backpack upon his arrest. The flashlight was consistent with a flashlight that had been hanging inside Mr. Sharp's home, which Mr. Sharp reported missing after the June 6, 2018 home invasion, only weeks before his death. There was very strong support that the flashlight contained the DNA of both Mr. Sharp and defendant.

Taking the evidence in the light most favorable to the prosecution, the evidence and reasonable inferences from the evidence support defendant's conviction of armed robbery.

## C. FELONY MURDER

Defendant argues that there was insufficient evidence that he committed the murder of Mr. Sharp or that he intended to commit the predicate felony of armed robbery at the time the killing occurred.

> The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [MCL 750.316(1)(b)]. [*Carines*, 460 Mich at 758-759 (quotation marks and citation omitted; first alteration in original).]

"[R]obbery" and "larceny of any kind" are predicate offenses enumerated in MCL 750.316(1)(b). "The facts and circumstances of the killing may give rise to an inference of malice." *Carines*, 460 Mich at 759. A factfinder "may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. Malice may also be inferred from the use of a deadly weapon." *Id*. (citation omitted).

It is undisputed that there was a killing of a human being, Mr. Sharp. Mr. Sharp's body was stabbed 28 times with a knife, and five of the wounds were individually life threatening. The second element is also supported by evidence because an inference of malice arises from defendant violently bludgeoning Mr. Sharp 28 times with the knife. Finally, as indicated earlier, the prosecution presented sufficient evidence that defendant committed armed robbery and there was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that the killing occurred during the commission of the armed robbery.

## D. FIRST-DEGREE ARSON

Defendant concedes that the evidence was sufficient to establish that an arson was committed, but argues that there was insufficient evidence to prove his identity as the perpetrator.

MCL 750.72 provides, in relevant part:

> (1) A person who willfully or maliciously burns, damages, or destroys by fire or explosive any of the following or its contents is guilty of first degree arson:
>
> * * *
>
> (b) Any building or structure or other real property if the fire or explosion results in physical injury to any individual.

Defendant concedes that there was a fire set in the basement of Mr. Sharp's home. A fire inspector's report indicated that the fire was started on or next to the victim's body. The medical examiner determined Mr. Sharp's cause of death was from multiple stab wounds. However, the medical examiner concluded that Mr. Sharp's thermal injuries from the fire could have been a

contributing cause to his death. As indicated, circumstantial evidence and inferences from the evidence placed defendant at or near Mr. Sharp's home during the period of time Mr. Sharp was killed. Evidence established that Mr. Sharp's body was moved from the kitchen to the basement and it was found under a pile of debris that had been set on fire. Mr. Sharp's credit card that was used in an attempt to transfer funds to defendant that same night was found in the debris pile on top of Mr. Sharp's body. Mr. Sharp's body was found severely burned as a result of the fire. The manner in which the body was moved and the debris pile on top of the body supported the inference that the fire was deliberately set.

In light of the evidence that defendant was in possession of Mr. Sharp's stolen electronic items and the circumstantial evidence that linked defendant to the killing of Mr. Sharp, there was sufficient evidence for a rational fact finder to find, beyond a reasonable doubt, that defendant was guilty of first-degree arson.

## E. MUTILATION OF A DEAD BODY

"[A] defendant is guilty of mutilation of a human body under MCL 750.160 if the defendant (1) without any legal authorization to do so, (2) causes permanent damage to a portion of a dead body, defaces a portion of a dead body by marring its appearance, or removes or carries away from the whole a portion of a dead body." *People v Bass*, 317 Mich App 241, 271; 893 NW2d 140 (2016).

In this case, Mr. Sharp's body was severely charred and burned. It is reasonable to infer from the record that defendant stabbed the Mr. Sharp, moved his body to the basement, and then set the body on fire. The medical examiner testified that Mr. Sharp's legs were "disarticulated from the body because of the burns."[2] Additionally, there was a fragment of burned bone that "stuck out" from Mr. Sharp's body. The medical examiner testified that the fire would have to have been extremely hot to burn through bone. It was also reasonable to infer from the record that defendant did not have any legal authority to burn the body. Therefore, there was sufficient evidence for a rational fact finder to find, beyond a reasonable doubt, that defendant was guilty of mutilation of a body.

In summary, the trial court did not err by determining that there was sufficient evidence to convict defendant of armed robbery, felony murder, arson, and mutilation of a dead body.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michelle M. Rick

---

[2] "Disarticulate" means "to become disjointed[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed).