RONAYNE KRAUSE, P.J.
Defendant was convicted by a jury of unlawful imprisonment, MCL 750.349b, and assault with a deadly weapon (felonious assault), MCL 750.82. The trial court sentenced defendant to concurrent prison terms of 43 months to 15 years for unlawful imprisonment and 32 months to 4 years for felonious assault. Defendant raises no argument on appeal challenging her convictions, but she argues that the trial court improperly scored her sentencing guidelines variables and, therefore, imposed an improper sentence. We are constrained to agree, in part, and we remand for possible resentencing.
The crimes at issue in this matter involve defendant, defendant’s three daughters (codefendants Kelli Hyde and Tamara Stephens, who appealed separately, and *341 Anika Garnes, who pleaded guilty and whose application for leave was previously denied), and their apparent belief that the victim stole two rings from Hyde.[1] The victim visited defendant’s house, where Hyde was also living, to visit Anika. The victim was taken to a bedroom where she was asked about the rings. The victim testified that when she denied taking the rings, Hyde began to beat her with her fists while Stephens repeatedly struck her with a bat. The victim testified that Stephens also sodomized her with the bat. The victim testified that while Stephens and Hyde were assaulting her, defendant was in the room “smoking cigarettes, orchestrating the whole thing.” Asked to explain what she meant by “orchestrating,” the victim explained, “[defendant] was telling Tamara and Kelli what to do. ‘Get—take those—get—make sure you take those shoes off. Get them toes. Get them knees so she can’t run.’ ” The victim testified that Hyde and Stephens obeyed defendant. A police officer who interviewed defendant the day after the incident testified that defendant admitted she “sat back on the bed and essentially watched . . . and gave instruction.”
After the assault, the victim was escorted to an SUV and driven from the home. The victim testified that defendant was giving the driver directions on where to go. The officer who interviewed defendant the day after the incident testified that defendant indicated it was her idea to put the victim in the car because, in the officer’s words, defendant “wanted to teach her a lesson.” The victim reported that defendant said at one point, “ ‘We should leave her butt naked, saying pussy for sale.’ ” The victim’s cell phone, voter registration card, and Social Security card were taken from her, *342 and she was left on a sparsely populated street in East Detroit. She went to the first house she saw; the owner allowed her to use a phone to summon assistance to take her to a hospital, where her injuries were documented and treated.
Defendant contends that the trial court improperly based her sentence on sentencing guidelines scored “using facts beyond those found by the jury or admitted by the defendant,” which “change [d] the applicable guidelines minimum sentence range.” People v Lockridge, 498 Mich 358, 399; 870 NW2d 502 (2015). We agree.
Defendant specifically objects to the scoring of Offense Variables 3, 4, 7, and 8. To summarize, Offense Variable (OV) 3 was scored at 10 points, requiring that “[b]odily injury requiring medical treatment occurred to a victim.” MCL 777.33(l)(d). OV 4 was scored at 10 points, requiring that “[s]erious psychological injury requiring professional treatment occurred to a victim.” MCL 777.34(l)(a). OV 7 was scored at 50 points, requiring that “[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.” MCL 777.37(l)(a).[2] OV 8 was scored at 15 points, requiring that “[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense.” MCL 777.38(l)(a).
We note that there is ample record evidence to support these scores. However, under Lockridge, the sentencing guidelines are no longer mandatory to the extent they are “scored on the basis of facts beyond *343 those admitted by the defendant or found by the jury beyond a reasonable doubt.” Lockridge, 498 Mich at 364. A departure from the guidelines now needs only to be “reasonable,” id. at 392, and “trial courts must assess the ‘highest number of points possible’ to each variable, ‘whether using judge-found facts or not,’ ” People v Stokes, 312 Mich App 181, 196; 877 NW2d 752 (2015), quoting Lockridge, 498 Mich 392 & n 28. However, because the sentence at issue here was imposed before Lockridge, it was imposed as a mandatory sentence rather than a departure. We do not entirely understand how this new scheme is either more comprehensible or better able to protect defendants from possible judicial capriciousness, but nevertheless, we must evaluate whether defendant’s OV scores can be upheld strictly by facts necessarily found by the jury or admitted by defendant.
We are therefore constrained to conclude that defendant’s OV scores were unsupported. The guidelines were scored for defendant’s unlawful imprisonment conviction. A conviction for felonious assault does not require an actual injury. See People v Davis, 216 Mich App 47, 53-54; 549 NW2d 1 (1996). Indeed, neither physical nor psychological injury is an element of either of defendant’s convicted offenses. Neither is any particular level of brutality or any aspor-tation or captivity “beyond the time necessary to commit the offense.” Consequently, we agree with defendant that none of the facts on which these OVs could have been scored was necessarily found by the jury.
The answer to the question whether any facts supporting the scoring of the OVs were “admitted by the defendant” is less obvious. Lockridge did not define that phrase. Defendant did not testify, but of *344 course, there are a variety of evidentiary rules under which a statement she might have made outside the courtroom could nonetheless be admitted into evidence. We conclude, however, that a fact is not “admitted by the defendant” merely because it is contained in a statement that is admitted. We note that, significantly, in the leading case relied on by the Michigan Supreme Court in Lockridge, the United States Supreme Court held that a statement made by the defendant outside the courtroom could not be used to affect the defendant’s sentencing despite the trial judge finding a police officer’s testimony about that statement credible and admissible. Apprendi v New Jersey, 530 US 466, 469-471; 120 S Ct 2348; 147 L Ed 2d 435 (2000). The United States Supreme Court contrasted that situation with another case in which a defendant admitted something at a plea hearing. Id. at 487-489. Also in contrast, this Court has concluded that a defendant had “admitted” to prior crimes by previously pleading guilty to them and then stipulating to those convictions within the case culminating in his sentence. People v Jackson (On Reconsideration), 313 Mich App 409, 433-436; 884 NW2d 297 (2015).
We hold that “admitted by the defendant” under Lockridge means formally admitted by the defendant to the court in a plea, in testimony, by stipulation, or by some similar or analogous means. Defendant did not make any such formal admission here. Consequently, the OVs discussed earlier in this opinion were impermissibly scored, and we are required to remand for possible resentencing in accordance with United States v Crosby, 397 F3d 103 (CA 2, 2005), as set forth in Lockridge. See Stokes, 312 Mich App at 197-203.
*345 Remanded for possible resentencing in accordance with the Crosby procedure. We do not retain jurisdiction.
Stephens, J., concurred with Ronayne Krause, P.J.

 This appeal was submitted for decision with the appeals of Hyde and Stephens (Docket Nos. 324802 and 324804).

 MCL 777.37 was amended subsequent to defendant’s sentencing; we refer to the language in place at the time.