*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AMELIA TANISHA HICKS,

        Defendant-Appellant.

UNPUBLISHED
September 12, 2025
10:19 AM

Nos. 371562;372074
Wayne Circuit Court
LC Nos. 23-000460-01-FH;
           23-004349-01-FH

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Amelia Hicks, was convicted of felony assault with a dangerous weapon, aggravated domestic violence, and aggravated stalking, and the trial court imposed a one-year jail sentence to be followed by several years of probation. In these consolidated appeals, she challenges only the sufficiency of the evidence supporting her felony assault and aggravated stalking convictions. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from the fallout of her year-long dating relationship with Angelo Swagerty. After their relationship ended in March 2022, Hicks allegedly stole Swagerty's truck and several important documents. Then, in June 2022, defendant drove past Swagerty while he was out walking near his house. Swagerty flagged defendant down and inquired about his documents. Defendant became defensive, cursed, exited the truck, and swung her fist at him while holding "something long and shiny"; she hit him about three times on the left side of his back. Swagerty pushed defendant away, and the two went their separate ways.

While walking home from the altercation, Swagerty "started to lose breath" and "felt something that was stinging a little bit." He made it to his front porch, collapsed, realized he was bleeding, and called 911. Upon removal of his shirt, Swagerty saw puncture wounds and concluded he had been stabbed. A responding police officer similarly observed "half an inch wounds" on him. Swagerty received medical treatment at a local hospital, the records of which reflected his having three puncture wounds located (1) in his lower back near his left kidney, (2) right above his kidney near his lung, and (3) in his back near his heart. Shortly after being

discharged from the hospital, Swagerty sought and obtained a Personal Protection Order (PPO) against defendant.

Two other altercations are of import. Later that summer, Swagerty encountered Hicks and her partner at a birthday party in a public park. As the couple walked by Swagerty, defendant lifted her shirt, showed him a gun on her hip, and "said F your paperwork, F your PPO." Then, less than a week later, Swagerty entered a nightclub, at which point defendant and another approached him. They began threatening Swagerty, with defendant again lifting her shirt, showing a gun, and exclaiming "F your PPO, it didn't do nothing then, it's not gonna do nothing now." Swagerty was escorted out, and he called 911. At defendant's trial, Swagerty testified he did not consent to these contacts with Hicks, which caused him to seek counseling—they made him "feel intimidated, in fear of [his] life," and "scared," "especially because she had already stabbed" him.

Based on these and other facts, a jury convicted defendant of felony assault with a dangerous weapon, MCL 750.82, and aggravated domestic violence, MCL 750.81a(2). A jury then separately convicted her of aggravated stalking, MCL 750.411i (but acquitted her of brandishing a firearm in public, MCL 750.234e). The trial court sentenced her to one year in jail and 24 months' probation each for her felonious assault and aggravated domestic violence convictions, and five years' probation for her aggravated stalking conviction, to run concurrently. This Court consolidated her appeals of right from both judgments. *People v Hicks*, unpublished order of the Court of Appeals, entered June 4, 2025 (Docket Nos. 371562; 372074).

## II. SUFFICIENCY OF THE EVIDENCE

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We "review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (citation omitted). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Bailey*, 310 Mich App at 713 (citation omitted).

## A. FELONY ASSAULT

We first turn to defendant's felony assault conviction under MCL 750.82. "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Hicks does not contest that she assaulted Swagerty or that she did so with the intent to injure him or place him in reasonable apprehension of immediate battery. Rather, she contends the prosecution failed to establish she used a "dangerous weapon," noting Swagerty only identified "something long and shiny" in her hands,

-2-

which, in her words, "could have just as easily [been] car keys in one of her hands." We cannot agree.

MCL 750.82 sets forth the "dangerous weapon" requirement: A "person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, *or other dangerous weapon*" is guilty of felonious assault. MCL 750.82(2) (emphasis added). A "dangerous weapon" can be "either (1) a weapon designed to be dangerous and capable of causing death or serious injury (e.g., a loaded gun) or (2) any other object capable of causing death or serious injury that the defendant used as a weapon (e.g., a screwdriver used as a knife)." *People v Norris*, 236 Mich App 411, 414-415; 600 NW2d 658 (1999). See also *People v Bosca*, 310 Mich App 1, 21; 871 NW2d 307 (2015) (explaining a dangerous weapon "can also be an instrumentality which, although not designed to be a dangerous weapon, is used as a weapon and, when so employed, is dangerous") (citation omitted), rev'd in part on other grounds 509 Mich 851 (2022). "Whether an object is a dangerous weapon depends upon the object itself and how it is used" and "is a question for the factfinder." *Norris*, 236 Mich App at 414-415.

Viewing the evidence in a light most favorable to the prosecution and drawing all inferences in support of the jury's verdict, ample evidence supports the jury's finding that Hicks assaulted Swagerty with a dangerous instrument. Swagerty testified defendant "got defensive and started swinging at" him, and he saw "something long and shiny" in her hands as she hit the left side of his back with her fist about three times. As Swagerty walked home, he felt a "stinging" pain, struggled breathing, realized he was bleeding, and saw stab-like wounds. Officers arrived and noted Swagerty's injuries, with a police officer testifying she observed half-inch wounds on Swagerty. Finally, Swagerty's medical records and photographs confirmed Swagerty had three puncture wounds.

Defendant resists this conclusion, noting nothing in the record directly confirms the instrument she used to stab him and that Swagerty did not receive stitches for his wounds. But circumstantial evidence alone is enough to sustain a conviction, *Blevins*, 314 Mich App at 357, and whether Swagerty required stitches matters not because felonious assault does not require the victim to suffer an injury, see *People v Garnes*, 316 Mich App 339, 343; 891 NW2d 285 (2016).

For these reasons, defendant's sufficiency-of-the-evidence challenge to her felony assault conviction lacks merit.

## B. AGGRAVATED STALKING

Defendant also challenges her aggravated stalking conviction under MCL 750.411i. That crime requires stalking and an aggravating circumstance. *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). On appeal, Hicks does not challenge whether aggravating circumstances existed in this case and instead asserts the lack of evidence demonstrating that she engaged in at least two instances of "unconsented contact," as required by MCL 750.411i. Again, we disagree.

Stalking is "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel . . . and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL

750.411i(1)(e). Harassment, in turn, means "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411i(1)(d). Finally, unconsented contact "means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued," and it includes "[f]ollowing or appearing within the sight of that individual" and "[a]pproaching or confronting that individual in a public place or on private property." MCL 750.411i(1)(f)(*i*) and (*ii*).

Viewing the evidence in a light most favorable to the prosecution and drawing all inferences in support of the jury's verdict, a rational juror could find defendant twice made "unconsented contact" with Swagerty. Start with the PPO, which gave her clear notice of Swagerty's desire to have no contact with her. Then, twice in less than a week, defendant approached Swagerty, mocked the PPO, and showed him that she was armed. Based on these actions and their relationship history, a reasonable juror could conclude Hicks engaged in at least two instances of "unconsented conduct."

Defendant sees the events differently. She claims, for example, that she did not initiate contact at the park. But that is a fact determination the jury resolved. Hicks also notes she had a right to be inside the nightclub because it is a public place, but the aggravated stalking statute specifically contemplates public-place encounters. See MCL 750.411i(1)(f)(*ii*) (defining unconsented contact as "[a]pproaching or confronting that individual *in a public place*") (emphasis added). And, even if no evidence demonstrated she went there intending to confront Swagerty, she chose to ignore the PPO and still continued to do so once there.

In sum, defendant's challenge to the sufficiency of the evidence supporting her conviction for aggravated stalking fails.

## III. CONCLUSION

For these reasons, we affirm the trial court's judgments.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock

-4-